**Robert George MOLL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 25653.**

United States Court of Appeals
Fifth Circuit.

July 3, 1969.

Rehearing Denied Aug. 29, 1969.

H. Robert Koltnow, Miami, Fla., for appellant.

William A. Daniel, Jr., Asst. U. S. Atty., William A. Meadows, Jr., U. S. Atty., Miami, Fla., for appellee.

Before WISDOM, GODBOLD and SIMPSON, Circuit Judges.

GODBOLD, Circuit Judge:

Appellant was convicted of interstate transportation of a stolen car under the

Dyer Act. On appeal he claims that his arrest was illegal and that evidence seized in a search of his person incident thereto should have been excluded, that his post-arrest incriminating statements were the fruit of an illegal search of the stolen car, and that his confession to the FBI was not sufficiently corroborated by other evidence to be admissible.

The testimony at pre-trial hearings on motion to suppress, plus that at the trial, established that at approximately noon, July 6, 1967, a nurse employed at a Miami, Florida hospital discovered appellant, who was not a hospital employee, in an office at the hospital. His hand was in a purse which belonged to the nurse. The nurse-owner asked appellant what he was doing. He ran out of the room, pushing the nurse to get out, and then ran from the building. The nurse followed quickly, never losing sight of him. With the help of bystanders, appellant was apprehended outside the building and brought back to the main office of the hospital. Police were called and upon arrival were told what had happened. After asking appellant his name, they read to him from a card what purported to be a *Miranda*-type warning. The police required or requested appellant to empty his pockets on a desk, and the owner of the purse was asked if she could identify anything as belonging to her. She claimed none of the items from appellant's pockets. The articles were placed in an envelope and given back to appellant. He was taken to the police station.

Appellant arrived at the police station about 1:00 p. m. He was placed in a cell where he remained until approximately 3:00 p. m. when he was brought to an interrogation room for questioning concerning the alleged larceny at the hospital and other similar crimes recently reported. Prior to questioning he was given a *Miranda* warning. During the interrogation Detective Rafferty required appellant to empty the envelope of personal effects onto a table. Among the items was an automobile tag receipt for a Florida license for a 1959 Buick.

Rafferty asked the whereabouts of the car, but appellant was unclear in his answers. Rafferty issued a pick-up order for the car with instructions to check the hospital parking lot. Approximately twenty minutes later a report came back to Rafferty that the license had been located at the hospital lot but that it was on a 1965 Ford station wagon rather than a 1959 Buick. Rafferty confronted appellant with this information. The trial judge concluded after the hearings on motion to suppress that at this point appellant admitted to Rafferty that he had stolen the Ford station wagon.

Rafferty went to the hospital parking lot and searched the station wagon. He ascertained the identification number of the car and discovered papers that showed the identity of the true owner. He then returned to the police station. His testimony, which the trial judge was entitled to accept, was that he did not question appellant further with regard to the car.

FBI Agent Dahl was called at approximately 6:00 p. m. He arrived at the police station at approximately 7:00 p. m., and, after warning appellant as required by *Miranda*, proceeded to question him regarding the Ford. Appellant gave Dahl a full statement describing his theft of the car in Illinois and his transportation of it to Florida. The statement was reduced to writing. Appellant read it, and signed it in the presence of Dahl and the local police.

Prior to his trial on the Dyer Act charge appellant filed a motion to suppress evidence obtained at various times during the afternoon of his arrest. After two very full and careful hearings on the motion the trial judge concluded that at the time of his arrest and at the time of his interrogation by local police and by Agent Dahl appellant was properly warned as required by *Miranda*. He concluded that the search of the car by Rafferty was illegal but that the statement given the FBI was not the fruit of that search because prior to the search appellant had admitted that he had stolen the car, this admission being the re-

sult of independent efforts of the police untainted by illegality. The court held that the tag receipt, which had been in appellant's pocket and then in the envelope, was admissible as the fruit of the search [of appellant's person] incident to a lawful arrest. He held the evidence obtained from the search of the car, including the identification number, inadmissible as the fruit of an illegal search.

## I

### Legality of the arrest

■ Appellant contends that he was illegally arrested and that all evidence which is the fruit thereof should have been excluded. Since appellant was arrested in Florida for a state offense, we look to Florida law, insofar as it is not violative of the Constitution, to determine the validity of his arrest.[1]

■ The term "arrest" has been defined by the Florida courts as "the apprehension or taking into custody of an alleged offender in order that he may be brought into the proper court to answer for a crime." Range v. State, 156 So.2d 534, 536 (Fla.App.1963).[2] Appellant was first taken into custody by the nurse and bystanders who caught him at the hospital, and the purpose of their custody was to bring him before the proper authority to answer for a crime. The arrest, therefore, occurred at the time the private citizens apprehended appellant.

■ Florida follows the common law with regard to arrests by private citizens. Dorsey v. United States, 174 F.2d 899 (5th Cir.1949); Marden v. State, 203 So.2d 638 (Fla.App.1967); Collins v. State, 143 So.2d 700 (Fla.App. 1962) (conviction reversed on other grounds); Poole v. State, 129 Fla. 841, 177 So. 195 (1937), appeal dism'd, 303 U.S. 619, 58 S.Ct. 611, 82 L.Ed. 1084 (1938); Fla.Stat.Ann. § 775.01 (1965). Under the common law, when a felony actually has been committed, a private citizen may arrest a person whom he reasonably believes to have committed the felony.[3] A private person may arrest for a misdemeanor only if it was committed in his presence and it involved a breach of the peace. See generally 4 Wharton, Criminal Law and Procedure §§ 1601–03; 5 Am.Jur.2d, Arrest §§ 34–36; 6 C.J.S. Arrest § 8.

■■ Appellant was observed by the nurse in the commission of what was, at a minimum, the misdemeanor of attempted larceny,[4] accompanied by a

---

1. In Lathers v. United States, 396 F.2d 524 (5th Cir. 1968) this court said that state law need not be consulted when determining the "sufficiency of cause required to sustain an arrest without a warrant by a state-authorized arresting officer." Id. at 531. Although the arresting officer in Lathers was a state policeman, the defendant was arrested for a federal crime. In the instant case appellant was arrested by one authorized under the state law to arrest but the arrest was for a state offense. We do not understand Lathers to require us under these circumstances to ignore state law in determining the validity of appellant's arrest.

2. "The elements of an 'arrest' comprehend a purpose or intention to effect an arrest under a real or pretended authority, the actual or constructive seizure or detention of the person to be arrested by the one having the present power to control him, communication by the ar-

resting officer to the one whose arrest is sought of his intention or purpose then and there to make the arrest, and an understanding by the person who is to be arrested that it is the intention of the arresting officer then and there to arrest and detain him."
Range v. State, 156 So.2d at 536; Chance v. State, 202 So.2d 825 (Fla.App.1967).

3. In some jurisdictions this rule is more relaxed and allows a private individual to arrest when he has probable cause to believe a felony has been committed, rather than requiring that the offense actually have happened.

4. F.S.A. § 776.04 Attempts, generally
"Whoever attempts to commit an offense prohibited by law and in such attempt does any act toward the commission of such an offense, but fails in the perpetration, or is intercepted or prevented in the execution of the same, shall, when no express provision is made

breach of the peace when he attempted to escape. *See* 6 C.J.S. Arrest § 8 c, at pp. 607–608; 11 C.J.S. Breach of the Peace § 2, at 819. The citizen's arrest was legal. Even if the citizens arrest were faulty—and we hold it was not—the officers had sufficient cause to arrest without a warrant for the felony of larceny which they had reasonable grounds to believe had been committed by appellant outside their presence. F.S.A. § 901.15 (Supp.1969). The hand in the purse, the flight, the assault by pushing the nurse, the chase and capture, were sufficient to constitute probable cause for the police to take appellant into custody, although after the initial search, conducted after the police arrived and took charge, nothing from the purse was found in appellant's possession.

█ Since appellant was legally arrested, it is axiomatic that the evidence turned up by a reasonable search of his person made incident to the arrest was admissible at his trial. The fact that the search was conducted by someone other than those who made the arrest is of no significance. O'Neal v. United States, 411 F.2d 131 (5th Cir.1969).[5]

## II

### Admissibility of Appellant's Oral and Written Statements

Appellant was given *Miranda*-type warnings on at least three occasions—by the police when they arrived at the hospital, by Detective Rafferty at the police station, and by FBI Agent Dahl. No attack is made on the warning given by the FBI agent prior to obtaining the written statement (and the record shows that it was sufficient). But appellant urges that he was improperly warned at the time of his arrest and prior to interrogation by the local police, and, invoking Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), he claims that the oral admission to the local police that he had stolen the car, and the full written statement given the FBI, were inadmissible.[6]

██ Under *Miranda* the burden of proving that proper warnings were given is on the government. 384 U.S. at

by law for the punishment of such attempt, be punished as follows:

\* \* \* \* \*

"(3) If the offense attempted to be committed is punishable by imprisonment in the state prison for a term of less than five years, or by imprisonment in the county jail, or by fine, the person convicted of such attempt shall be punished by imprisonment in the county jail not exceeding one year, or by fine not exceeding three hundred dollars."

F.S.A. § *811.021 Larceny defined; penalties; sufficiency of indictment, information or warrant*

"(1) A person who, with intent to deprive or defraud the true owner of his property or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:

"(a) Takes from the possession of the true owner, or of any other person; or obtains from such person possession by color or aid of fraudulent or false representations or pretense, or of any false token or writing; or obtains the signature of any person to a written instrument, the false making whereof

would be punishable as forgery; or secretes, withholds, or appropriates to his own use, or that of any person other than the true owner, any money, personal property, goods and chattels, thing in action, evidence of debt, contract, or property, or article of value of any kind;

\* \* \* \* \*

"(3) If the value of the property stolen as mentioned in the preceding section is less than $100.00 the offender shall be deemed guilty of petit larceny and upon conviction, shall be punished by imprisonment in the county jail not exceeding 6 months or by fine not exceeding $300.00."

5. As pointed out above, appellant attacks the admissibility of the fruits of the search of his person on the theory that the arrest was invalid. He has not contended that the search which turned up the tag receipt was not incident to the arrest, so we do not discuss this issue.

6. The record does not reveal that the oral statement was admitted at appellant's trial.

479, 86 S.Ct. at 1630, 16 L.Ed.2d at 726. This burden was not met with regard to the warning given by the local police at the hospital. While there was testimony that the police officers read to appellant a card concerning his rights, the evidence does not demonstrate that a constitutionally adequate warning was given. The government's burden may not be met by presumptions or inferences that when police officers read to an accused from a card they are reading *Miranda* warnings or that what is read, without revelation of its contents, meets constitutional standards.

 Although we conclude that the initial warning, given at the hospital, was not proved adequate, there was no prejudice to appellant therefrom. A *Miranda* warning is not prerequisite to validity of the search incident to arrest. The trial court correctly concluded that the second warning (by Rafferty, at the police station) complied with the requirements of *Miranda*. There was not shown to be any interrogation between the first warning and the second warning, nor was any statement made by appellant during this period introduced at trial.

Appellant also urges that his written statement should have been excluded from evidence as the fruit of the search of the car which the district judge ruled to be illegal.[7] The question for determination according to the Supreme Court is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441, 455 (1963).

 Appellant's argument rests on his theory that his oral admission to local police that the car was stolen came after the car was searched and because of the information obtained in the search, and that the admission led in turn to the full written statement to the FBI agent. But the trial judge concluded that the admission of theft came prior to the search and as a consequence of the appellant's being confronted with the fact that his license plate had been discovered on the 1965 Ford instead of the 1959 Buick. There is adequate evidence to support the conclusion of the trial judge. Based on that conclusion the oral admission was not the product of any illegal conduct by the local police, and together with the information concerning the switched license, was sufficient independent justification for calling the FBI.[8] The fruit of the independently secured information is not tainted merely because the information independently obtained was subsequently rediscovered or confirmed by illegal means. Wong Sun v. United States, 371 U.S. at 485, 83 S.Ct. at 416, 9 L.Ed.2d at 453-454; United States v. Balistrieri, 403 F.2d 472 (7th Cir.1968); Aiuppa v. United States, 393 F.2d 597 (10th Cir. 1968); Etheridge v. United States, 380 F.2d 804 (5th Cir.1967).

III

Independent Corroboration For Appellant's Confession

 Appellant argues that before the government could offer his written confession into evidence the corpus delicti of the offense was required to be proved. The law is well settled to the contrary. It is sufficient if the independent evidence, together with the

7. The government argues that the trial judge erred in determining that the search of the car was illegal. 18 U.S.C.A. § 3731 was amended in 1968 to allow the government the right to appeal from the granting of a motion to suppress. However, it is not clear whether the amendment applies to the present case because appellant was tried and the motion to suppress granted prior to its enactment. We find it unnecessary to determine this question (and the underlying question of whether appellant had standing to object to the search) because of the disposition we make of the case.

8. Also there was evidence that appellant himself asked the local police to call the FBI.

confession, establishes guilt beyond a reasonable doubt. Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954); Caster v. United States, 319 F.2d 850 (5th Cir.1963).

Evidence introduced to corroborate a confession, however, must be substantial enough to establish the trustworthiness of the confession. Landsdown v. United States, 348 F.2d 405 (5th Cir.1965); Kelly v. United States, 246 F.2d 864 (10th Cir.1957). In the instant case the original owner of the car testified concerning the identity of his car and the circumstances of its disappearance in Illinois. Appellant's former employer testified to having seen appellant driving a similar car, and a woman from the license sales office testified that appellant purchased the tag that was found on the stolen car. The testimony of each of these witnesses corroborated statements made in the written confession. In addition the car was found in the parking lot at the hospital where appellant was arrested. While there was no independent evidence showing that appellant had ever been in Illinois, we conclude that the testimony sufficiently established the trustworthiness of appellant's confession.

Affirmed.