UNITED STATES of America, Plaintiff-Appellee,

v.

Kenneth George MONTOS, Defendant-Appellant.

No. 27516.

United States Court of Appeals, Fifth Circuit.

Jan. 22, 1970.

Certiorari Denied April 6, 1970. See 90 S.Ct. 1262.

---

Raymond E. LaPorte, Ragano & LaPorte, Tampa, Fla., for defendant-appellant.

Edward F. Boardman, U. S. Atty., Thomas G. Wilson, Asst. U. S. Atty., Tampa, Fla., for plaintiff-appellee.

Before WISDOM, GEWIN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

Kenneth George Montos was convicted on a two-count indictment charging him with theft of mail matter by a postal employee in violation of 18 U.S.C. § 1709 (1964). On this appeal his principal contentions are as follows: (1) he was never given a full, fair hearing upon his motion to suppress certain oral statements made by him and items seized from his car; (2) oral statements he made to a postal inspector before he was formally arrested should have been excluded because the *Miranda* warnings had not yet been given; (3) statements he made after he was arrested and given the *Miranda* warnings should have been excluded because there was no showing that he had waived his federal constitutional rights and because his arrest was unlawful; (4) items seized from his car should have been excluded because the search of his car was unlawful; and (5) cumulative errors committed in the court below denied him a fair trial.

Defendant's conviction grew out of the following facts. In January 1968 he was working as a postal employee at a Postal Sectional Center in Tampa, Florida. Several days before defendant was arrested, J. R. Stokes, a postal inspector stationed in Atlanta, Georgia, was informed that Montos had been spending coins of numismatic value at the Tampa Sectional Center. The inspector's job was to investigate all losses of numis-

matic coins in Florida, Georgia, and the Carolinas. After learning that defendant's duties included the repair of damaged parcels at a rewrap table, Stokes devised a plan to test defendant's honesty. He prepared two damaged parcels containing coins and, with the help of defendant's supervisor, had the parcels placed on the rewrap table at 11:45 p. m. on January 24, 1968. At 6:00 the next morning, Stokes was advised by defendant's supervisor that defendant had gone to his locker with his apron rolled up about 45 minutes after he had arrived at the Center. While Montos was absent from the rewrap table, the supervisor had searched for the two test parcels, but had not found them. The two parcels did not reach the shop designated as the addressee on them. On January 25 another test parcel was similarly prepared. At about 6:00 on the morning of January 26, Stokes learned that defendant's supervisor could not find this parcel either. Stokes then obtained a description of defendant's car and its location in the Sectional Center parking lot. With two other inspectors he proceeded to the lot at about 7:30 a. m. Montos was scheduled to leave work an hour later. Without warrants for arrest or search, the inspectors located what appeared to be defendant's car and stationed themselves so that they could observe anyone approaching it. When a man came up to this car, they moved their car to block its exit. After determining that the man was Montos, the inspectors left their car and identified themselves. Stokes asked to talk to Montos. Montos responded to this request by unlocking his car, sitting on the

front seat, and otherwise implicitly indicating that they should talk in the car.

Stokes sat down on the back seat of the car, while the other two inspectors stood nearby. Stokes asked if Montos had handled the three test parcels. Montos replied that he had handled the third parcel, but not the first two. While sitting in the back seat, Stokes noticed a box on the car floor and several coin containers on the seat. Having obtained defendant's disavowal that he had handled the first two parcels, Stokes read the *Miranda* warnings to him, gave him the warning and waiver form from which he had read, asked Montos if he understood the warnings, and placed him under arrest. The inspectors then searched the car and found the remains of the two test parcels. Questioning of defendant continued briefly. After about 40 minutes, the group went into the Sectional Center. There Montos, having admitted his guilt, asked to call a lawyer.

 Before his trial Montos filed a motion to suppress the statements he had made and the items that had been seized from his car on the morning he was arrested. A hearing was conducted on this motion. At this hearing Stokes was the only witness. Thereafter the District Judge denied the motion. At trial Montos renewed his motion to suppress. The Trial Judge, who was not the same District Judge who presided at the pretrial hearing, heard testimony from Stokes and Montos out of the presence of the jury. The Trial Judge then refused to grant defendant's motion.[1] The

---

[1]. Stokes and Montos gave the Trial Judge conflicting accounts of the events leading up to and following defendant's arrest. Neither the Trial Judge nor the Judge presiding at the pretrial hearing made findings on defendant's motions to suppress. If findings had been made—which is the better practice—this Court would have been required to accept them unless they were clearly erroneous. United States v. Ogle, 5 Cir., 1969, 418 F.2d 238; see 3 Wright, Federal Practice and Procedure § 675, at 130 (1969). Since findings were not made, we uphold the ruling of the Trial Court if there is any reasonable view of the evidence to support it. See Scarbeck v. United States, 1962, 115 U.S.App.D.C. 135, 317 F.2d 546, 562, cert. denied, 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963). Credibility determinations are for the Trial Court. In this case, therefore, a reasonable view of the evidence is that the Trial Court accepted Stokes' version of the arrest and search.

evidence complained of was introduced by the Government, and the jury returned a verdict of guilty on both counts.

## I.

We must decide initially whether Montos received fair, adequate consideration of his motions to suppress in the type of District Court proceeding contemplated by Rule 41(e) of the Federal Rules of Criminal Procedure. Montos claims that his motions were not fairly and adequately considered. We conclude that they were.

■ Rule 41(e) provides that any person "aggrieved" by an unlawful search and seizure may move a federal judge in the district where the seizure was made to suppress for use as evidence against him anything unlawfully so obtained. The judge to whom the motion is made must receive evidence "on any issue of fact necessary to the decision of the motion." Fed.R.Crim.P. 41 (e). To minimize the delay that would be caused by attacks made during trial on the admissibility of illegally seized evidence and to eliminate from the trial disputes that are not immediately relevant to the question of the defendant's guilt, see Jones v. United States, 362 U.S. 257, 264, 80 S.Ct. 725, 732, 4 L.Ed. 2d 697 (1960), Rule 41(e) further provides that "The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing." [2]

Ordinarily, when a motion to suppress is denied before trial, the legal basis of this denial becomes the law of the case for purposes of the trial, subject to appellate review, and the defendant may not relitigate the suppression issue at trial.[3] *See generally* 3 Wright, Federal Practice and Procedure § 676 (1969). Occasions will arise, however, when a pretrial denial of a motion to suppress is not binding upon the trial judge. *See, e. g.,* United States v. Koenig, 5 Cir., 1961, 290 F.2d 166, 172–174, aff'd sub nom. Di Bella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962). If new facts come to light at trial, the trial judge in the exercise of his discretion may consider anew the suppression issue. *See* United States v. Koenig, *supra. See also* Rouse v. United States, 1966, 123 U.S.App.D.C. 348, 359 F.2d 1014, 1016.

■ A review of the record in this case convinces us that neither of the District Judges to whom Montos made his motions to suppress failed to comply with the requirements of Rule 41(e) in denying these motions. Defendant's allegations of defects in the pretrial hearing on the motion to suppress are based upon the District Judge's denial of defendant's request to examine the written report made by Stokes concerning his arrest. Montos there relied upon the Jencks Act, 18 U.S.C. § 3500 (1964), and the principle of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to obtain production of this report. According to the express terms of the Jencks Act, however, Montos was not

---

2. If a defendant testifies in support of a motion to suppress on Fourth Amendment grounds, his testimony is not admissible against him at trial over his objection. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 976, 19 L.Ed.2d 1247 (1968).

3. In this regard one Circuit Judge has written:
 " * * * It is, of course, always possible to renew at trial a motion to suppress, but it was not the purpose of

Rule 41(e) * * * customarily to countenance consecutive hearings and dispositions of the same issue, once before trial and once during, absent some new and unusual turn in the evidence at trial. The whole point of the pretrial hearing of motions to suppress is to expedite the trial, even to the point of eliminating the need to hold one at all * * *."
Rouse v. United States, 1966, 123 U.S. App.D.C. 348, 359 F.2d 1014, 1017 n. 1 (McGowan, J., concurring).

entitled to examine the report until Stokes had testified "on direct examination in the trial of the case," 18 U.S.C. § 3500(a) (1964),[4] and due process does not require premature production at pretrial hearings on motions to suppress of statements ultimately subject to discovery under the Jencks Act.[5] Therefore, the pretrial hearing on defendant's motion to suppress was in no way defective. Because Montos was unable to examine the Stokes report before trial, he claims that the hearing conducted by the Trial Judge on his renewed motion to suppress was defective. He bases this contention on the ground that the Trial Judge failed to make a new determination on the suppression issue in light of that report, which was made available to defendant only at trial. We disagree. The Trial Judge found no circumstances in the renewed presentation of evidence which warranted granting of the motion. We are satisfied that the Trial Judge afforded Montos every reasonable opportunity to present new evidence which might cast doubt on the pretrial ruling and that he did not abuse his discretion in refusing to conduct a hearing of the magnitude requested by defendant.

## II.

We next consider defendant's argument that the postal inspector who arrested him should not have been allowed at trial to testify to certain statements made by Montos before he was formally arrested and given the *Miranda* warnings. When Montos made these statements he and Stokes were sitting in defendant's car, the other two postal inspectors accompanying Stokes were standing nearby, and the postal inspectors' car was positioned so that Montos could not drive his car from the parking lot. Stokes testified to defendant's statements as follows:

"* * * I asked him, 'Do you recall handling a parcel [the third test parcel] addressed to Plaza Coin Shop this morning?' He said yes, he did. He said he had turned that over to a Foreman Farwell, that the parcel was in damaged condition, and he had requested Mr. Farwell to put a note inside the parcel.

"He agreed that he had prepared the parcel, requesting the addressee to notify the sender that the parcels should be packed more carefully. Then I asked him had he handled any parcels on the morning of January 25th that were addressed to Plaza Coin Shop, Tampa, Florida, and he said no he had not."

After receiving this answer regarding the missing test parcels, Stokes read the *Miranda* warnings to defendant, handed him the written warning and waiver form, and formally arrested him. Montos contends that admission of the above testimony was reversible error because he made these statements while "in custody" and without prior benefit of the *Miranda* warnings. The Government responds that Montos was not "in custody" until his formal arrest since, before that

4. 18 U.S.C. § 3500(a) reads as follows:
 "In any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than the defendant) to an agent of the Government shall be the subject of subpena, discovery, or inspection until said witness has testified on direct examination in the trial of the case."
 This section manifests the general aim of the Jencks Act to restrict the use of statements such as the Stokes report to impeachment. Palermo v. United States,

360 U.S. 343, 349, 79 S.Ct. 1217, 1223, 3 L.Ed.2d 1287 (1959). *See generally* 2 Wright, Federal Practice and Procedure § 417 (1969).

5. In *Brady* the Supreme Court held that "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment * * *." 373 U.S. at 87, 83 S.Ct. at 1196–1197. We do not read *Brady* to override the mandate of the Jencks Act, 18 U.S.C. § 3500(a) (1964), at pretrial hearings on motions to suppress.

time, he could have requested the postal inspectors to move their car and then have driven away.

■■■ In criminal trials, " * * * the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. * * *" Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966). At trial the prosecution must show that the defendant was given the *Miranda* warnings before custodial interrogation began, that he had the opportunity to exercise the rights to which he was so advised throughout the interrogation, and that he knowingly, intelligently waived these rights and agreed to answer questions or make a statement; otherwise, use against him of evidence obtained as a result of "custodial" interrogation is error. *Id.* at 479, 86 S.Ct. at 1630. *See also* Moll v. United States, 5 Cir., 1969, 413 F.2d 1233, 1237–1238. If the interrogation was not "custodial," however, a failure by those questioning the defendant to give the *Miranda* warnings will not require suppression of evidence obtained as a result of such questioning. *See, e. g.,* United States v. Welsh, 5 Cir., 1969, 417 F.2d 361; Bendelow v. United States, 5 Cir., 1969, 418 F.2d 42; Posey v. United States, 5 Cir., 1969, 416 F.2d 545. Under the circumstances of this case, therefore, we must determine whether the pre-arrest questioning of Montos should be characterized as "custodial interrogation" or as traditional investigatory procedure beyond the reach of *Miranda*. For reasons that follow, we conclude that admission of testimony to defendant's pre-arrest statements was not error.

■■■ "Custodial interrogation," *Miranda* teaches, means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612 (1966). The *Miranda* decision was predicated upon the conclusion that "without proper safeguards the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." Miranda v. Arizona, 384 U.S. 436, 467, 86 S.Ct. 1602, 1624 (1966); *see* Hoffa v. United States, 385 U.S. 293, 304, 87 S.Ct. 408, 414, 17 L.Ed.2d 374 (1966). The purpose of the detailed procedure fashioned by *Miranda* was to "give meaningful protection to Fifth Amendment rights," Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968), by dispelling the "compulsion inherent in custodial surroundings." Miranda v. Arizona, 384 U.S. 436, 458, 86 S.Ct. 1602, 1619 (1966). Since the vice against which the privilege against self-incrimination protects is compulsion, legal or factual, in the process of interrogation, *see* Hoffa v. United States, 385 U.S. 293, 303–304, 87 S.Ct. 408, 414 (1966); United States v. Burr (In re Willie), 25 Fed.Cas. 38, 40 (No. 14692e) (C.C.D.Va.1807), the necessity for observance of the *Miranda* ritual depends upon whether compulsive factors are present in the circumstances under which questioning is conducted.

■■■ The "salient features" of the cases decided in *Miranda* were "incommunicado interrogation of individuals in a police-dominated atmosphere." Miranda v. Arizona, 384 U.S. 436, 445, 86 S. Ct. 1602, 1612 (1966). The *Miranda* procedures are intended to combat the effect which such a "compelling atmosphere," *id.* at 478, 86 S.Ct. at 1630, has upon the exercise of constitutional rights. They are not meant to preclude law enforcement personnel from performing "their traditional investigatory functions", *id.* at 481, 86 S.Ct. at 1631, such as "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process * * *." *Id.* at 477, 86 S.Ct. at 1629. Unless restraint

of an individual by law enforcement personnel is "significant," *Miranda* warnings are not required.

Cases decided subsequent to *Miranda* have made clear that a "compelling atmosphere"—the phenomenon that marks a "custodial interrogation" and against which warnings are required—may develop beyond the confines of the station house. *See, e. g.,* Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed. 2d 311 (1969) (defendant's home); Windsor v. United States, 5 Cir., 1968, 389 F.2d 530 (defendant's hotel room). General field investigations of citizens not under restraint, however, are beyond the reach of *Miranda* even though they may involve some detention. *E. g.,* United States v. Welsh, 5 Cir., 1969, 417 F.2d 361; Bendelow v. United States, 5 Cir., 1969, 418 F.2d 42; McMillian v. United States, 5 Cir., 1968, 399 F.2d 478; Jennings v. United States, 5 Cir., 1968, 391 F.2d 512; *see* Allen v. United States, 1968, 129 U.S.App.D.C. 61, 390 F.2d 476, 479.

Where the line between "general investigation" and "custodial interrogation" is crossed is not capable of precise demarcation. Each case will turn upon its own particular facts. Therefore, we continue to follow a case-by-case approach in this area to foster proper development of controlling precedent. Agius v. United States, 5 Cir., 1969, 413 F.2d 915, 918. Courts have employed various criteria in determining when an individual's right to the *Miranda* warnings arises. These criteria incude probable cause to arrest, subjective intent of the police, subjective belief of the defendant, and focus of the investigation. No single criterion is necessarily decisive. Instead, each case must be examined to determine whether there were present the compulsive factors with which *Miranda* was concerned.

We turn, then, to decide whether the pre-arrest questioning in this case was conducted in an atmosphere of compulsion. A man identifying himself as a postal inspector asked a postal employee two questions in the employee's automobile in the parking lot of the Post Office Sectional Center where that employee worked. These questions concerned parcels that the employee might reasonably be expected to have recently handled during the regular course of his work at a rewrap table. When so questioned, the employee's exit was blocked by the postal inspector's car. In view of the briefness of the interrogation, the subject matter of the questions, the information Stokes had previously acquired, and all the circumstances under which the two questions were asked, we believe that *Miranda* does not require the conclusion that the inspectors were no longer in the process of screening crime from mishap, but were instead engaged in a "custodial interrogation." Accordingly, we hold that the Trial Court did not err in admitting defendant's pre-arrest statements.[6]

### III.

Montos next contends that the Trial Court erred in refusing to exclude testimony relative to incriminating oral statements he made after he was given the *Miranda* warnings and informed that he was under arrest. He bases this contention on two grounds: (1) the Government failed to demonstrate adequately that he had waived his *Miranda*-protected rights; and (2) the statements were the fruit of an illegal arrest.

---

6. Even if we were to conclude (and we do not so conclude) that Stokes acted too late in giving the *Miranda* warnings, Montos would not be entitled to a new trial on the ground that admission of testimony to his pre-arrest statements was a *Miranda* error. In view of the innocuous nature of these statements and the overwhelming evidence of defendant's guilt which was adduced wholly apart from them, the admission of that testimony would be harmless beyond a reasonable doubt. Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed. 2d 705 (1967); *cf.* Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

When a defendant warned of his rights makes statements without a lawyer present, the prosecution may use these statements at trial only if it sustains its "heavy burden" of demonstrating that the defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). *See also* Gilpin v. United States, 5 Cir., 1969, 415 F 2d 638; Moll v. United States, 5 Cir., 1969, 413 F.2d 1233. To be valid, a waiver must be made voluntarily, United States v. Ogle, 5 Cir., 1969, 418 F.2d 238, and may not be presumed "simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 (1966). An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. *See* Bond v. United States, 10 Cir., 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. *See* Carnley v. Cochran, 369 U.S. 506, 516, 82 S. Ct. 884, 890, 8 L.Ed.2d 70 (1962).

In this case the record establishes that Montos was adequately advised of his rights and that he voluntarily, knowingly, and intelligently waived them. Stokes read the warnings to Montos and then handed the warning and waiver form to him. After defendant had read the form, Stokes asked if he understood it. Montos replied that he did. Approximately 40 minutes later, after Montos had been questioned briefly, he was taken to the Sectional Center. He there signed the waiver form and asked to call a lawyer. We conclude under all circumstances of the case that the Government met its burden of showing a valid waiver.

Defendant's second argument respecting the admissibility of his post-arrest statements develops because he was arrested by postal inspectors without a warrant. At the time Montos was apprehended, postal inspectors were not officially authorized to make arrests.[7] Alexander v. United States, 5 Cir., 1968, 390 F.2d 101, 105. His arrest was illegal, therefore, unless it constituted a valid citizen's arrest under Florida law. United States v. Chapman, 5 Cir., 1969, 420 F.2d 925; Alexander v. United States, 5 Cir., 1968, 390 F.2d 101. *See also* United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). Montos contends that the prosecution failed to show that the postal inspectors complied with Florida law.

Florida has adopted the common law with respect to citizens' arrests. Moll v. United States, 5 Cir., 1969, 413 F.2d 1233; *see, e. g.,* Marden v. State, 203 So.2d 638 (Fla.Dist.Ct.App.1967); Collins v. State, 143 So.2d 700 (Fla.Dist. Ct.App.1962). In Florida a private person may make a lawful "arrest"[8] without a warrant when a felony has been committed and he has reasonable cause to believe that the person he arrests has committed it. Moll v. United States, 5 Cir., 1969, 413 F.2d 1233, 1236; Dorsey v. United States, 5 Cir., 1949, 174 F.2d 899, 901. Since a felony was committed in this case, we must decide whether Stokes had probable cause to believe that Montos was the perpetrator when he arrested him. That Stokes and the other inspectors were not familiar with the Florida rule is irrelevant to this question.

---

7. Congress has since specifically authorized postal inspectors to make arrests for violations of the postal laws. 18 U.S.C. § 3061(a) (2) (1964), *as amended* (Supp. IV, 1968).

8. The Florida courts have defined the term "arrest" as "the apprehension or taking into custody of an alleged offender in order that he may be brought into the proper court to answer for a crime." Range v. State, 156 So.2d 534, 536 (Fla. Dist.Ct.App.1963); *see* Moll v. United States, 5 Cir., 1969, 413 F.2d 1233, 1236 and n. 2.

■ The circumstances here show conclusively that when Stokes arrested Montos, he had probable cause to believe that Montos had taken the test parcels from the mails. For example, Stokes had knowledge that defendant had been spending coins of numismatic value at the Sectional Center commissary and that the test parcels placed at defendant's work station were missing. Moreover, the postal inspector could see materials of the type used by coin collectors in the back seat of defendant's car. Because probable cause for the arrest thus existed, the arrest was lawfully made.

■ Montos would have the prosecution pinpoint the moment at which the postal inspector acquired probable cause to arrest him. Neither the police nor private persons, however, are required

"* * * to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

Hoffa v. United States, 385 U.S. 293, 310, 87 S.Ct. 408, 417 (1966). A warrantless arrest is not to be declared invalid merely because the arresting officer had time to obtain a warrant before apprehending the suspect. *See e. g.,* Dailey v. United States, 5 Cir., 1958, 261 F.2d 870. Therefore, that Stokes might have been able to obtain an arrest warrant before taking Montos into custody is not a sufficient reason for invalidating defendant's arrest.

## IV.

■ The postal inspectors also searched defendant's car without first obtaining a search warrant. Montos contends that the tangible evidence seized in this search should not have been admitted at trial because the search was illegal.[9] We have considered and rejected the four prongs of this contention as follows. First, Montos argues that the search was not made incident to a valid arrest. We have already determined that the arrest was lawful. Secondly, Montos argues that the inspectors had time to obtain a search warrant before making the search. To be sure, "in seizing goods and articles, law enforcement agents must secure and use search warrants wherever reasonably practicable." Trupiano v. United States, 334 U.S. 699, 705, 68 S.Ct. 1229, 1232, 92 L.Ed. 1663 (1948). In this case, however, the record shows that it was not "reasonably practicable" for the inspectors to have obtained a search warrant before conducting their search. Since the inspectors had probable cause to search, the lack of a warrant did not make their search illegal. Defendant next contends that the arrest was made as a mere pretext to search for evidence. We disagree. The circumstances do not show that this was a sham arrest or that the search was one of general exploration.

■ Defendant finally contends that the inspectors should have warned him of his right to refuse them entry into his car. This argument is without merit under the circumstances here, since this was not a consent search situation but was a search incident to a lawful arrest. The evidence seized, therefore, was properly admitted in the Trial Court.

## V.

■ In a last attempt to have his conviction overturned, Montos argues

---

9. The search in this case was made before the Supreme Court rendered its decision in Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). This Court has held that *Chimel* is "not retroactive even as to cases still in the process of direct review." Lyon v. United States, 5 Cir., 1969, 416 F.2d 91 [September 4]. We therefore determine the validity of the search here by reference to the law as it existed prior to *Chimel.*

that a cumulation of three errors committed in the court below denied him a fair trial. The first alleged error is that the Trial Judge informed the jury that the case could be appealed by the defendant to the Court of Appeals. Referring to the rulings he would make on the admissibility of evidence, the Trial Judge stated during the course of the voir dire, "If I am wrong, that can be looked upon in the Court of Appeals." This was not error. *See* United States v. Grimsley, 5 Cir., 1969, 419 F.2d 387. Defendant's other two allegations of error are too far afield to merit discussion. He received a fair trial. We are not required to grant him a second one.

Affirmed.