**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Charles Seymour MICIELI,
Defendant-Appellant.**

**No. 78–5278.**

United States Court of Appeals,
Fifth Circuit.

April 26, 1979.

Rehearing Denied May 31, 1979.

**104**

Tanya M. Plaut, H. Franklin Robbins, Jr., Orlando, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Jacksonville, Fla., Kendell W. Wherry, Asst. U. S. Atty., Orlando, Fla., for plaintiff-appellee.

Before BROWN, Chief Judge, TUTTLE and HILL, Circuit Judges.

JAMES C. HILL, Circuit Judge:

Charles Seymour Micieli appeals from the judgment entered on his jury conviction for engaging in the business of dealing in firearms without being properly licensed. 18 U.S.C.A. § 922(a)(1). His appellate efforts focus on three separate aspects of the law of confessions: (1) whether statements he made without *Miranda*[1] warnings during a pre-grand jury appearance interview were properly admitted; (2) whether he validly waived his rights prior to making post-arrest statements; (3) whether there was sufficient evidence to corroborate his admissions and to sustain the jury's guilty verdict. Since we deem the admissions, which we conclude were properly admitted, together with the remaining evidence sufficient to sustain the jury's guilty verdict, we affirm.

Of course, we view the evidence in the light most favorable to the Government, allowing all reasonable inferences which sustain the jury's verdict. *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, apart from his admissions, there is only incidental evidence of Micieli's dealings in firearms. This is significant to our consideration of each issue raised.

In November and December of 1975, Micieli was unemployed and living in Indialantic, Brevard County, Florida. During this period he purchased ten handguns at the Oaks Trading Post Gun Shop in Rockledge, Brevard County, Florida. Apart from the testimony of Government agents based on Micieli's admissions that he purchased the handguns for another person to whom he resold them at a $25 per gun profit, there was little other evidence of the dealing in firearms charge. The manager of the Oaks Trading Post Gun Shop testified that Micieli had purchased the ten handguns during the period. On one occasion he was seen in the shop along with Frank Chierco, who was allegedly under investigation by agents of the Bureau of Alcohol, Tobacco and Firearms for his possible connection with a homicide in New Jersey that had been committed with a handgun purchased in Florida which the agents had traced to Chierco. The Government introduced a Bureau of Alcohol, Tobacco and Firearms Form 4473, Firearms Transaction Record, for each of the ten handguns bearing Micieli's signature, which was verified by a handwriting expert. A certificate was also introduced from the United States Department of the Treasury which established that Micieli was not a licensed firearms dealer during the critical period. In summary, evidence independent of Micieli's admissions proved only that he was not a federally licensed firearms dealer and that he had purchased the ten handguns. Thus, the only evidence that Micieli sold the handguns, an element of the crime for which he was convicted, was provided by his own admissions to the Govern-

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

ment agents. Therefore, the initial question of the admissibility of these admissions becomes critical to our review of his conviction.

The events leading up to Micieli's pre-grand jury appearance admission in April of 1977 began nearly a year before. In February of 1976, Micieli was subpoenaed to appear to testify before the federal grand jury in the Middle District of Florida. This proved to be the first of several federal grand jury subpoenas with which Micieli was served in Florida and New Jersey. In response to this first subpoena, Micieli appeared and invoked his Fifth Amendment privilege against self-incrimination.

A few weeks later, an agent of the Bureau of Alcohol, Tobacco and Firearms went to Micieli's home in Florida. The agent asked him if he wished to make a statement, suggesting that "it would be easier for him if he talked." When Micieli declined to make a statement, the agent responded that he could become an accomplice in a matter then pending before the grand jury, if he did not cooperate. In June of 1976, Micieli was again served with a subpoena compelling his appearance before the federal grand jury in the Middle District of Florida. The subpoena was served by the same agent who had earlier visited his home and solicited his cooperation. On June 23, 1976, Micieli made his second appearance before the federal grand jury and again invoked his Fifth Amendment privilege against self-incrimination. The Assistant United States Attorney conducting the grand jury investigation applied to the District Court for the Middle District of Florida for an order compelling Micieli to testify. This application was denied.

In July of 1976, Micieli moved to New York State. During April of 1977, he was once again served with a subpoena to appear, this time before a federal grand jury in Newark, New Jersey. On April 28, 1977, Micieli responded to the third federal grand jury subpoena. On this occasion, the pre-grand jury appearance interview took place at which Micieli made a damaging admis-

sion. This interview provides the basis for Micieli's first argument for reversal of his conviction.

■ If this pre-grand jury appearance interview was a custodial interrogation, then *Miranda* warnings were required and the failure to give the warnings rendered Micieli's admission inadmissible. On this theory, Micieli unsuccessfully moved to suppress his admission. This Court has followed a case-by-case approach in determining whether a custodial interrogation occurred. *United States v. Montos*, 421 F.2d 215 (5th Cir.), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); *Agius v. United States*, 413 F.2d 915 (5th Cir. 1969). Four factors have been identified as significant to the determination: (1) a probable cause to arrest; (2) the subjective intent of the interrogators to hold the suspect; (3) the subjective belief of the suspect concerning the status of his freedom; and (4) whether the investigation has focused on the suspect. *United States v. Nash*, 563 F.2d 1166 (5th Cir. 1977); *United States v. Carollo*, 507 F.2d 50 (5th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975). Micieli argues that factors (3) and (4) are present. The Government counters that none of the four factors are present since the subjective intent of the agents was to obtain information from Micieli about Frank Chierco, and since the focus of the investigation was on Chierco and his activities, not on Micieli.

Based on findings made after a hearing, the District Court denied Micieli's motion to suppress his admissions made during the pre-grand jury appearance interview. Conflicts in the testimony at the suppression hearing were reconciled to provide the following account of what took place.

As Micieli could not be promptly called before the grand jury, he was asked if he would be willing to talk with some agents from the Bureau of Alcohol, Tobacco and Firearms. He was advised that he had been subpoenaed to testify concerning the transportation of guns from Florida to New Jersey and about his association with Frank Chierco. The Assistant United States At-

torney told Micieli, prior to his talking with the agents, that he did not have to talk with the agents but, if he did, that he should tell the truth. No one ever told Micieli that nothing he said would be used against him, despite his assertion to the contrary at the suppression hearing. Micieli agreed to speak with the agents. No *Miranda* warnings were given. Micieli and three agents talked about one and one-quarter hours in a small room with the door closed. The Assistant United States Attorney went in and out asking questions from time to time during the interview. Micieli did not refuse to answer any questions. One of the agents testified that the door was not locked, that the setting was congenial and that Micieli was free to leave the room. During the interview, Micieli admitted that he purchased ten handguns in Florida and sold them to a person named John for $25 more than the purchase price, and that a person by the name of Frank Chierco was with him when he made some of the purchases. He also told the agents that he was not a federally licensed firearms dealer. After the interview ended, when Micieli was brought on before the grand jury, he was given his *Miranda* warnings. After a few questions he asked for an adjournment so as to obtain counsel, and his request was granted.

■ Applying the four factors of *Nash* and *Carollo* to the instant case, we agree with the District Court's characterization of the pre-grand jury appearance interview as non-custodial. Prior to the interview the agents did not have probable cause to arrest Micieli. The subjective intent of the agents was to obtain information about Frank Chierco and interstate gun transportation. Micieli was not the target of the investigation. He was free to leave the room and there was no indication of any overreaching on the part of the agents. There was no objective, reasonable ground for him subjectively to believe that he was in custody. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977); *United States v. Nash*, 563 F.2d 1166 (5th Cir. 1977). *Cf. United States v. Robertson*, 582 F.2d 1356 (5th Cir. 1978) (*en banc*). He had

invoked his privilege against self-incrimination on several prior occasions and again immediately after the interview. In each of these occasions he had been free to walk away, and he did. Even at the hearing on the suppression motion, he testified only that he was not sure if he could have left, which is far short of a belief that he was in custody. Finally, the focus of the investigation was on Frank Chierco and interstate gun transportation. Micieli's conviction was a by-product of this investigation, but there is no suggestion that the dealing in firearms charge was within the agents' contemplation before the interview. The District Court concluded that the pre-grand jury appearance interview was not a custodial interrogation. Therefore, the failure to give Micieli *Miranda* warnings did not make his admissions inadmissible. Since we cannot hold that the District Court's findings were clearly erroneous, the denial of the suppression motion is upheld. *See United States v. Planche*, 525 F.2d 899 (5th Cir. 1976).

Micieli repeated this admission on a later occasion which serves as the factual basis for his second claim of error. Although there is evidence to the contrary, the agent who processed Micieli on the date of his arrest testified that he made an incriminating statement which basically repeated his admissions during the pre-grand jury appearance interview some seven months before. Micieli argues that the Government failed to establish a valid waiver and, therefore, the post-arrest statement was inadmissible.

When Micieli was arrested at his place of employment on November 15, 1977, the arresting agent advised him of the charge and of his rights. At that time, Micieli stated that he understood his rights but did not wish to make any statement. Within an hour of his arrest, Micieli was taken to the Bureau of Alcohol, Tobacco and Firearms offices in New York for processing. During processing, another agent again advised Micieli of his rights, using Bureau of Alcohol, Tobacco and Firearms Form 4176. The processing agent read the contents of the Form

4176 to Micieli. Form 4176, which was justly criticized for its inadequate format by the District Court, was arranged in two parts. The upper portion of the Form 4176 listed the various rights of an accused; the lower portion contained a provision for the acknowledgment *and* waiver of those rights. There was but one line for the signature at the bottom of the form. Thus, with this format a person who signed to acknowledge a warning would necessarily indicate waiver of the rights articulated in the warning. This seems obviously inadequate. Despite the defective format of the Form 4176, however, our inquiry, as was the District Court's on the motion to suppress, must be focused on what actually took place in order to determine the waiver issue.

■ At the suppression hearing, Micieli made a two-pronged challenge to the admissibility of his post-arrest statement: first, he denied making any statement and second, even assuming that he made an incriminating statement, he contended that the Government failed to prove a valid waiver and his statement was inadmissible.

At the suppression hearing and at trial, the processing agent testified that following his arrest and after the *Miranda* rights had been twice read to Micieli, he volunteered the statement that he did purchase the handguns and did sell them to an individual named John. At the suppression hearing, defense counsel's efforts to establish that the statements were never made proved ineffective when another agent, who admitted that he did not hear the conversation, explained that he was not in the room the entire time. The District Court credited the processing agent rather than Micieli. After review of the record, we are satisfied of the correctness of this credibility choice. *See United States v. Planche*, 525 F.2d 899 (5th Cir. 1976).

■ Assuming the statement was made, we conclude that Micieli validly waived his rights. It is clear the Micieli was advised of his rights twice on the day he was arrested within a period of two hours, once when he was arrested and once when he was processed. Under no coercion, he then made the

statement which the Government offered against him. Micieli asserted that he signed the Form 4176 with the understanding that he was merely acknowledging his understanding of his rights and was not waiving them. The processing agent testified that it was his general practice to impress upon suspects that the Form 4176 was both an acknowledgment *and* a waiver. The agent also testified that Micieli said he understood the Form 4176. The District Court held the statement admissible even under Micieli's version, concluding that the statement itself was a separate, valid waiver of Micieli's rights. We uphold the determination. *See United States v. Planche*, 525 F.2d 899 (5th Cir. 1976). An express statement of waiver is not required; all the prosecution must have shown was that Micieli was effectively warned of his rights and that he then intelligently and understandingly declined to exercise them by making the statement. *See United States v. James*, 528 F.2d 999 (5th Cir. 1976); *United States v. Daniel*, 441 F.2d 374 (5th Cir. 1971); *United States v. Montos*, 421 F.2d 215 (5th Cir.), *cert. denied*, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532 (1970); *Menendez v. United States*, 393 F.2d 312 (5th Cir. 1968). *But see United States v. Christian*, 571 F.2d 64 (1st Cir. 1978). The Government satisfied this burden here.

Micieli's final contention concerns the sufficiency of the evidence on which he was convicted. Under well-considered controlling precedent, his contention falls.

■ The Government had the burden of proving that Micieli was engaged in the business of dealing in firearms and that he was not a federally licensed firearms dealer. The District Court correctly instructed the jury: "Dealing in firearms is commonly understood as selling and/or trading in firearms, as well as acquiring firearms for sale by purchase and/or trade." *See United States v. King*, 532 F.2d 505, 510 (5th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 384, 50 L.Ed.2d 327 (1976) and cases cited. Micieli argues that there was insufficient evidence, apart from his two admissions, that he *sold* the ten handguns. He premises this argu-

ment on the general rule that an uncorroborated confession or admission is itself insufficient evidence of guilt. The Government argues that it did not rely solely on Micieli's admission first made at the pre-grand jury appearance interview and repeated after his arrest during processing that he had purchased the ten handguns and sold them for a $25 profit to a person named John. The Government asserts that its evidence, independent of the admission established: (1) on November 18, 1975, Micieli purchased two .22 calibre handguns at the Oaks Trading Post Gun Shop; (2) on November 19, 1975, Micieli purchased two .22 calibre handguns at the Oaks Trading Post Gun Shop; (3) on December 16, 1975, Micieli purchased three .22 calibre handguns at the Oaks Trading Post Gun Shop; (4) on December 17, 1975, Micieli purchased three handguns, a .22 calibre, a .25 calibre and a .32 calibre, at the Oaks Trading Post Gun Shop; (5) Robert Griggs, the salesman on duty at the Oaks Trading Post Gun Shop at the time of the above ten purchases, identified Micieli as the buyer; (6) during the November 19, 1975, transaction, Frank Chierco was with Micieli; (7) an Alcohol, Tobacco and Firearms Agent also knew Frank Chierco as John Brown; (8) each of the ten transactions was a cash sale; (9) Micieli was not a federally licensed firearms dealer; (10) Micieli, within a period of 30 days, engaged in the purchase of ten separate handguns of small calibre. The Government suggests that the "John" to whom Micieli admitted selling the handguns was Frank Chierco and, thus, the admission was adequately corroborated. Micieli answers that the Frank Chierco investigation is outside the record and cannot be considered. He would have us conclude that there was no corroboration of his admission that he *sold* the handguns, an element of the offense. He would have us hold, therefore, that his uncorroborated admission could not alone sustain his conviction. We believe Micieli's reliance on the corroboration rule of confession law is misplaced.

▪ The law of confession has received constant and careful attention from the judiciary in this country which, at times, has suggested a basic concern:

We have learned the lesson of history, ancient and modern, that a system of criminal law enforcement which comes to depend on the 'confession' will, in the long run, be less reliable and more subject to abuses than a system which depends on extrinsic evidence independently secured through investigation.

*Escobedo v. Illinois*, 378 U.S. 478, 488–89, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) (notes omitted). This concern is evident in the requirement that a confession be corroborated in order to sustain a conviction; a defendant cannot be convicted solely on the basis of his own admission. The United States Supreme Court established the federal rule of corroboration in two cases decided in the same term.

The Supreme Court considered the extent of corroboration of an admission necessary to sustain a conviction in *Opper v. United States*, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954). In *Opper*, the Supreme Court recognized two somewhat inconsistent approaches. The first approach required extrinsic proof of the *corpus delicti*, that is, that there be independent evidence that the harm or injury occurred and had a criminal origin. The second approach required only that there be extrinsic evidence of a corroborative nature establishing the credibility of the admission. The Supreme Court opted for the second approach in *Opper*.

▪ During the same term, the Supreme Court elaborated on its holding in *Opper*. *Smith v. United States*, 348 U.S. 147, 75 S.Ct. 194, 99 L.Ed. 192 (1954), raised two questions: (1) whether corroboration or extrinsic evidence is necessary for all elements of the offense established by admissions and (2) whether corroboration or extrinsic evidence is sufficient which merely fortifies the truth of the admission without independently establishing the crime charged. In *Smith*, the Supreme Court answered both questions in the affirmative and held that all elements of the offense must be established by independent evidence *or* corroborated admissions, but one available mode of

corroboration is for the extrinsic evidence to bolster the admission itself and thus prove the offense through the admission. This has long been the federal rule and the rule of this Court.[2]

Here, the admission alone established that Micieli sold the handguns, an element of the offense of unlawfully dealing in firearms. But, contrary to Micieli's assertions, the Government's independent evidence satisfied the requirement of corroboration.

If the independent evidence is sufficient to establish the truth, trustworthiness and reliability of the accused's statement to the investigating authorities, and the statements themselves supply whatever elements of the offense are not proved by the independent evidence, the proof is sufficient to send the case to the jury.

*Scarbeck v. United States,* 115 U.S.App. D.C. 135, 317 F.2d 546 (1962), *cert. denied,* 374 U.S. 856, 83 S.Ct. 1897, 10 L.Ed.2d 1077 (1963).[3] All that was contained in the admissions, except the sales to John, was proved by the extrinsic evidence. Even ignoring, for the sake of argument, the Government's suggestion that John was re-

ally Frank Chierco, the admission was sufficiently corroborated by the extrinsic evidence set out above.

When the Government's extrinsic evidence is considered along with Micieli's twice repeated admission, there is sufficient evidence to sustain the jury's verdict. Therefore, the judgment appealed from is

AFFIRMED.

---

**2.** *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963); *United States v. Calderon,* 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954); *Warszower v. United States,* 312 U.S. 342, 61 S.Ct. 603, 85 L.Ed. 876 (1941); *United States v. Gresham,* 585 F.2d 103 (5th Cir. 1978); *United States v. Evans,* 572 F.2d 455 (5th Cir. 1977), *cert. denied sub nom. Tate v. United States,* —— U.S. ——, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); *United States v. Bagley,* 537 F.2d 162 (5th Cir. 1976); *United States v. Kennedy,* 496 F.2d 1185 (5th Cir. 1974), *cert. denied,* 419 U.S. 1035, 95 S.Ct. 519, 42 L.Ed.2d 310 (1975); *United States v. Cooper,* 493 F.2d 473 (5th Cir. 1974), *cert. denied,* 419 U.S. 859, 95 S.Ct. 108, 42 L.Ed.2d 93 (1975); *United States v. White,* 493 F.2d 3 (5th Cir. 1974), *cert. denied,* 419 U.S. 901, 95 S.Ct. 186, 42 L.Ed.2d 147 (1975); *United States v. Khandjian,* 489 F.2d 133 (5th Cir. 1974); *United States v. Baty,* 486 F.2d 240 (5th Cir.), *cert. denied,* 416 U.S. 942, 94 S.Ct. 1948, 40 L.Ed.2d 294 (1973); *United States v. Gravitt,* 484 F.2d 375 (5th Cir. 1973), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 761 (1974); *United States v. Arroyave,* 477 F.2d 157 (5th Cir. 1973); *United States v. Abigando,* 439 F.2d 827 (5th Cir. 1971); *United States v. Frazier,* 434

F.2d 994 (5th Cir. 1970); *United States v. Seckler,* 431 F.2d 642 (5th Cir. 1970); *United States v. Trabucco,* 424 F.2d 1311 (5th Cir.), *cert. denied,* 399 U.S. 918, 90 S.Ct. 2224, 26 L.Ed.2d 785 (1970); *Roberts v. United States,* 416 F.2d 1216 (5th Cir. 1969); *Moll v. United States,* 413 F.2d 1233 (5th Cir. 1969); *Landsdown v. United States,* 348 F.2d 405 (5th Cir. 1965); *Ivey v. United States,* 344 F.2d 770 (5th Cir. 1965); *Caster v. United States,* 319 F.2d 850 (5th Cir. 1963); *Smyly v. United States,* 287 F.2d 760 (5th Cir.), *cert. denied,* 366 U.S. 930, 81 S.Ct. 1654, 6 L.Ed.2d 391 (1961); *Belvin v. United States,* 273 F.2d 583 (5th Cir. 1960); *Dailey v. United States,* 260 F.2d 927 (5th Cir. 1958); *Joseph v. United States,* 239 F.2d 524 (5th Cir. 1957); *French v. United States,* 232 F.2d 736 (5th Cir.), *cert. denied,* 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed.2d 62 (1956); *Vlouties v. United States,* 219 F.2d 782 (5th Cir. 1955). *See generally* McCormick on Evidence § 158 (Cleary ed.); Wigmore on Evidence §§ 2070-2074 (Chadbourn rev. ed.); Wright, *Federal Practice and Procedure* § 414; Annotation 45 A.L.R.2d 1308 and cases cited.

**3.** *See also* authorities cited in note 2, *supra.*