**UNITED STATES of America**

v.

**John U. MARCH and Robertus Shoemaker.**

**Crim. No. 13968.**

United States District Court
M. D. Pennsylvania.

March 11, 1966.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Harry A. Nagle, Asst. U. S. Atty., Lewisburg, Pa., for plaintiff.

Richard P. Noll, Markowitz, Kagen & Griffith, York., Pa., for defendant, John U. March.

FOLLMER, District Judge.

This matter is before the Court on motions of John U. March for judgment of acquittal and for new trial.

Defendant March was charged with co-defendant, Robertus Shoemaker, in a one count indictment, with devising and intending to devise a scheme and artifice to defraud and to obtain money by means of false and fraudulent pretenses, representations and promises from certain named persons in violation of 18 U.S.C. § 1341.

After a trial by jury, a verdict of guilty was returned as to both defendants on April 12, 1965. On April 15, 1965 defendant March filed a standard form motion for judgment of acquittal and motion for new trial. On July 12, 1965 he filed an additional reason for a new trial alleging that "there was conduct

on the part of representatives of the United States Government which rendered it impossible for the defendant to obtain a fair, just and impartial verdict, which conduct deprived the defendant of his constitutional rights to a trial before an impartial jury as guaranteed in the Sixth Amendment to the Constitution of the United States."

On January 28, 1966 defendant March filed additional reasons for new trial alleging:

1. The Court erred in failing to charge the jury that good faith on the part of the defendant would render him not guilty.

2. The Court erred in refusing to grant defendant's thirteenth point for charge, which read as follows:

"If the Defendant March did whatever he did, no matter how ridiculous, in good faith and lacked criminal intent, he would not be guilty of anything."

After the filing of the transcript of the trial, counsel agreed that briefs would be submitted by both defendant and the Government and that the Court would dispose of the motions without oral argument.

Defendant's brief confines itself exclusively to the Court's refusal of defendant's thirteenth point, supra, and claims that the Government failed to prove the intent to defraud and that in consequence thereof, defendant March is entitled to an acquittal. No mention is made in defendant's brief of the earlier motions for new trial, including the reference to the alleged conduct of representatives of the United States Government which it is claimed deprived defendant of an impartial trial. This is a very serious charge and cannot be permitted to remain in the record unsupported and unchallenged.

In view of the fact that defendant has quite obviously decided not to press the reason given for new trial in Paragraph 3 of the motion filed July 12, 1965, Paragraph 3 will be stricken from the record.

Defendant's claim here is predicated on the refusal by the Court to affirm his Point No. 13, supra.

This point was refused, because, as the Court stated, it was covered in the charge. No exceptions were taken to the charge or rulings on submitted points by defendant March, nor did the said defendant make any request of the Court for clarification thereof.

During the trial the Government produced the testimony of persons associated with defendants in the enterprise, the fourteen victims from fourteen different states mentioned in the indictment, the bank account and cancelled checks of the enterprise, the Postmaster of the Post Office in which the uses of the mail were made in execution of the scheme, and the admissions of defendant March to the Postal Inspector.

The prosecution stems from the conduct of a business venture initiated by defendants. In the latter part of 1961 defendant March contacted one Emig to obtain financing for a plastic boat manufacturing business to be called Seaboard National Plastics & Research Co., Inc., (hereinafter called "Seaboard") and to obtain the incorporation of the company. March was unable to get the financing and the company was never incorporated.

Early in 1963 one Dowell became involved in the plastic boat business, his part was to manufacture boats for sale and for this purpose he needed a starting capital of $6,000.00. Although Emig was unable to produce the capital, defendant March and Dowell went ahead with the enterprise by using clippings from an advertisement of a legitimate boat producing firm in making a layout of an advertisement, which March took to an advertising man where it was completed and produced.

When Dowell entered the enterprise he moved his equipment to a plant at New Kingston, Pennsylvania, where power was available. On April 14, 1964 he was required by defendants to move to an-

other building in Wellsville, Pennsylvania. There was no power available here which precluded any manufacturing activity. Dowell complained to defendants that production could not start unless electric power was installed, and that a deposit of $180.00 was needed. Defendants never provided electricity, nor did they make the deposit. Although no boats were ever produced, an advertisement dated March 25, 1963 represented, inter alia, that the boat pictured was in existence and was being produced in a complete and operating fabrication and manufacturing plant, and that the boat was ready for immediate shipment to dealers for sale in the Spring sales season, then in progress. A later advertisement dated April 6, 1963 was printed restating the first advertisement and incorporating another boat. Defendant March admitted mailing these advertisements.

At the instance of Dowell, a jet pump was ordered from and shipped by a California concern to New Kingston. On defendants' failure to pick up or pay for same, the pump was returned to the shipper.

Each of the fourteen victims mentioned in the indictment were produced and by their testimony proved the mailings of the advertisements, the fraud upon them and subsequent lulling letters. Bank records showing the account of Seaboard, including cancelled checks, deposit agreement and signature card signed by both defendants, were produced. The Secretary of Seaboard, who was also part time Secretary for defendant Shoemaker, testified that defendant March called the office used by Seaboard regularly. The New Kingston Postmaster produced her office records regarding the post office box number used in the advertisement prepared and mailed by defendant March. She also testified that Dowell, Ashmore and March regularly picked up mail delivered to that box.

Ashmore testified that he was defendant March's accountant prior to his association with the enterprise in this case, that he wrote many checks drawn on enterprise's bank account, and that several were endorsed for deposit to credit of Pappagallo, Inc., which he identified as a restaurant owned by defendant March's wife and mother, located in a hotel owned by March.

Postal Inspector testified regarding defendant March's admissions that March was to receive a share in ownership of Shur Zero, a company being developed by defendant Shoemaker, that Shoemaker was to use the New Kingston plant then occupied by Dowell, that Dowell was to move to Wellsville, that defendant admitted opening the accounts at a Mechanicsburg, Pennsylvania, bank.

The Government rested and defendants' motion for a directed verdict of not guilty was denied by the Court.

Defendant March denied knowledge of the operation. Defendant Shoemaker produced testimony showing that March was intimately involved in the operation. Shoemaker also testified that it was defendant March's original idea, that Shoemaker became president and signed checks at March's request, that March was fully advised of the receipt of orders with payment, the acknowledgment of the orders, and the receipt of letters of inquiry.

The record in this case is replete with evidences of fraud on the part of defendant March. He conceived the idea of the scheme, he made but one feeble effort at obtaining the necessary financing, and after his failure, proceeded with the scheme, knowing full well that he had neither the necessary capital nor the expertise to produce the boats he offered for sale. He plagiarized the advertisements of legitimate concerns. Although no boats were ever produced, he represented in the advertisements that the boats pictured were in existence and were being produced in a complete and operating fabrication and manufacturing plant, that the boats were ready for

immediate shipment. The use of the mails in circulating these advertisements and the fraud perpetrated on fourteen customers in fourteen different states was proven. Misrepresentations were also made that the Company had complete engineering, fabrication and manufacturing facilities under the direction of a noted plastic designer, Dowell, all of which was completely false.

Defendant Shoemaker was engaged in the food storage and transportation business named Harrisburg Food Terminal, from the location of which Shoemaker was being evicted. He decided to form a new food storage and transportation business to be called Shur Zero. Both March and Shoemaker agreed to share ownership of Shur Zero and to furnish capital they devised Seaboard. The money obtained from the victims by reason of the fraudulent boat advertising was spent principally to support Shur Zero. This was done principally by Shoemaker with the knowledge of March.

Prior to the mailing of the second advertisement on April 6, 1963, the engineer, Dowell, was obliged to move his installed equipment from New Kingston, where power was available, to Wellsville, where no power was available. Certainly if defendant could have been so completely immersed with a sense of well-being and competence to do that which he was protesting so volubly when his enterprise was located in a power equipped plant, one seeks in vain for any basis of honest hope for the success of the operation after the moving to a nonpower equipped plant and before the second mailing of advertisements went out.

There can be no question but that defendants did use the mails to receive the orders and remittances from the victims. Actually some of these orders were received from the mails a considerable time after Dowell and his uncle, the only people in the scheme who had any, even though very slight, expertise in the manufacture of boats, had left the operation. The taking of all of these letters was by defendant March himself, his personal account-

ant Ashmore, or his associate Dowell. Furthermore, many of the checks written on the bank account of Seaboard were endorsed to the credit of Pappagallo, Inc., a closely held March family corporation.

Defendant March relies heavily on Coleman v. United States, 167 F.2d 837, 840 (5 Cir., 1948). In my opinion, this case is completely inapposite. There the Court said, inter alia: "The Government relied upon appellants' acquisition of money and property as evidence of the existence of the scheme; while the defendants contended and testified that they profited nothing, as showing their good faith." In Coleman there was no evidence of any misrepresentation of facts to prospective purchasers.

■■■ There is not a shred of evidence in this case that would call for a specific "good faith" instruction by the Court. In Beck v. United States, 305 F. 2d 595, 599 (10 Cir. 1962), the Court said, inter alia:

> "Appellants strongly urge error because of the court's refusal to give a separate instruction to the jury on their defense of 'good faith.' As they contend 'good faith' is a complete defense to a mail fraud prosecution. * * * We agree also with appellants in their contention that a defendant in a criminal case is entitled to adequate jury instructions on his theory of defense, *provided, however, there is evidence before the jury to reasonably support such theory.* * * * But, the sufficiency of the instructions may not be determined by the giving, or the failure to give, any one or more instructions. To make this determination, all of the instructions given must be viewed as a whole. * * *" (Emphasis supplied.)

Having in mind the fact that defendant March relied solely on his own testimony, which was of course completely self-serving and amounted to nothing more than a plea of not guilty, and an emphasis on his contention that whatever

he did was based on his honest hope of eventual success, and in view of defendant's studied and persistent series of misrepresentations as the result of which innocent purchasers all over the United States were victimized, one can reach but one conclusion, namely, there just never was in the mind of this defendant any honest hope of eventual success.

The Court correctly charged as follows:

"*  *  * no amount of honest belief that his corporate enterprise would eventually succeed can excuse a willful misrepresentation by which the purchasers' or prospective purchasers' funds were obtained."

I feel that the Court in its charge did accurately cover the defense of good faith and properly denied defendant's Point for Charge No. 13.

Defendant March's motion for new trial will be denied.

Defendant March argued that the Court should on its own motion enter an acquittal for defendant on the basis that the evidence does not disclose an intent on his part to defraud anyone. This contention is entirely unsupported by the evidence.

█  As stated by the Court in United States v. Painter, 314 F.2d 939, 943 (4 Cir., 1963):

"*  *  * The clear answer is that no amount of honest belief that his corporate enterprise would eventually succeed can excuse the willful misrepresentations by which the investors' funds were obtained. An investor may be defrauded if his reliance is induced by deliberately false statements of fact, and the defendant's optimism as to the future is no defense. *  *  *"

Defendant's motion for judgment of acquittal will be denied.