The **UNITED STATES** of America, Plaintiff-Appellee,

v.

**Robert Lee WHITE**, Defendant-Appellant.

No. 71-1437

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Oct. 19, 1971.

Rehearing Denied Nov. 22, 1971.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

---

Roy Bass, Lubbock, Tex. (Court appointed), for defendant-appellant.

Eldon B. Mahon, U. S. Atty., W. E. Smith, Alex H. McGlinchey, Asst. U. S. Attys., Fort Worth, Tex., James F. Gaulding, Asst. Regional Counsel, Dallas, Tex., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

Robert Lee White was indicted November 12, 1970, on two counts for violations of 18 U.S.C. § 922(a) (6) making it unlawful for any person knowingly to make a false statement to a licensed dealer in connection with acquisition of a firearm.[1]  After a jury trial, White was

---

1. 18 U.S.C. 922 provides that it shall be unlawful:

(6) for any person in connection with the acquisition * * * of any. firearm * * * from a * * * licensed dealer * * * knowingly to make any false or fictitious oral or written statement * * * likely to deceive such * * * dealer * * * with respect to any fact material to the lawfulness of the sale or other disposition of such firearm * * * under the provisions of this chapter.

The indictment charged in Count I:

That on or about August 3, 1970, in the vicinity of Lubbock, Lubbock County, Texas, and in the. Northern District of Texas, ROBERT LEE WHITE, defendant herein, in connection with the acquisition of a firearm

found guilty on both counts and sentenced to imprisonment for three years on each count, the terms to run concurrently. In this appeal, he urges reversal of his conviction on the following grounds:

1. There is a fatal variance between the offense charged by the indictment and the proof presented at the trial.

2. The trial court erred in refusing to charge the jury as to whether White actually made any acquisition of firearms or whether the acquisition, if any, was made by others.

3. The Government did not adequately prove a waiver of *Miranda* rights prior to giving an oral statement which was admitted into evidence at trial.

I. *Variance Between Indictment and Proof*

■ The appellant contends that the indictment charges him with giving false statements to Leonard Eugene Huber, doing business as Huber Boot & Leather Company, although proof at the trial was to the effect that he made the statements to Rosie Marquez, an employee of Huber. The appellant has, however, apparently misread the indictment. See footnote 1. The indictment charges the making of a false statement "in connection with the acquisition of a firearm from a licensed dealer in firearms, that is * * * from Leonard Eugene Huber, doing business as Huber Boot & Leather Company. * * * " The indictment, which merely tracks the wording of the statute, does not charge

the name of the person to whom the false statement was made. There was, therefore, no variance between the indictment and the proof.

■ Even assuming that the indictment might be read to charge a false statement to Huber rather than, as developed at the trial, to Rosie Marquez, this variance would not require reversal. An authoritative discussion of the effect of variance between indictment and proof is found in Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314, 1318:

> The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to "affect the substantial rights" of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense.

*Accord,* England v. United States, 5 Cir. 1949, 174 F.2d 466; United States v. Mann, 5 Cir. 1970, 432 F.2d 53. This record and the brief submitted by counsel are devoid of any indication of prejudice or surprise, even assuming a legitimate misreading of the indictment. Surely, the appellant is fully protected

from a licensed dealer in firearms, that is, in connection with the purchase of a .38 Special Llama revolver, serial number 594988, from Leonard Eugene Huber, doing business as Huber Boot & Leather Company, 805 Broadway Street, Lubbock, Texas, did knowingly and unlawfully make a false and fictitious written statement, that is to say, he then and there gave a written statement on Department of Treasury, Internal Revenue Service Form 4473, that, among other things, he had not been convicted of a crime punishable by imprisonment for a term exceeding one year, and this false and fictitious written statement was likely to deceive such licensed dealer in firearms with respect to a fact material to the lawfulness of the sale and disposition of such firearm under provisions of Chapter 44, Title 18, United States Code, all in violation of Section 922(a) (6), Title 18, United States Code.

It is undisputed that White had previously been convicted of a crime punishable by imprisonment for a term exceeding one year. Count II was identical except it concerned "the purchase of a .25 caliber Wischo, semi-automatic pistol, serial number 91357" on the same occasion.

from any other prosecution for the same offense.

## II. *Acquisition*

■ On the assumption that the statute requires a false statement by the actual purchaser of the firearms, counsel for White requested a charge as to whether White was the purchaser. Testimony at the trial revealed a conflict as to whether White was the actual purchaser or merely accompanied the purchasers. There is no dispute that White made a false statement on the Treasury Department Form No. 4473 executed at the time of the sale. The district court properly denied the required charge. The statute requires only a false statement "in connection with the acquisition", whether or not that statement is made by the actual purchaser.

A search of the legislative history of the Federal Gun Control Act of 1968 of which Section 922(a) (6) is a part fails to shed any light on the interpretation of that section. The Congressional purpose in enacting this legislation is, however, clear. One goal sought by Congress was control over the ease with which criminals may acquire firearms.[2]

The Congress hereby finds and declares—* * * (2) that the ease with which any person can acquire firearms other than a rifle or shotgun (including criminals, juveniles without the knowledge or consent of their parents or guardians, narcotics addicts, mental defectives, armed groups who would supplant the functions of duly constituted public authorities, and others whose possession of such weapons is similarly contrary to the public interest) is a significant factor in the prevalence of lawlessness and violent crime in the United States * * *.

Pub.L. 90–351 & 901. In attempting to achieve control over the sale of firearms to criminals, Section 922(d) (1) prohibits sales by dealers to "any person knowing or having reasonable cause to believe that such person—* * * has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year * * *." In conjunction with a sale of firearms, the transferor (seller) and transferee (buyer) must execute Form 4473 provided by the Treasury Department, Internal Revenue Service, Alcohol, Tobacco, and Firearms Division "so that a person licensed under Chapter 44 may determine if he may lawfully sell or otherwise dispose of a firearm to the person identified in Section A and to alert the transferee (buyer) of certain restrictions on the receipt and possession of firearms." The buyer must certify, among other things, "I am neither under indictment for, nor have I been convicted of, a crime punishable by imprisonment for a term exceeding one year. * * *" Reinforcing the form is Section 922(a) (6), which White was convicted of violating, prohibiting false statements in connection with a sale. In short, false statements on the form, which contain the restrictions on sales, are illegal. Were the appellant's interpretation of the statute accepted, an individual could falsify the form and escape liability through an intermediary. In this case, for example, White could facilitate the purchase of a firearm, even though he is admittedly a convicted criminal, by falsifying the form, yet escape liability by asserting that the actual purchaser was another. Of course, nothing would stop the purchaser from then selling or giving the firearm to the person who falsified the form. Surely, Congress could not have intended to allow such easy evasion of a comprehensive scheme.

In light of the clear will of Congress to control the ease with which convicted criminals may acquire firearms, we feel that the district court's reading of the statute is a reasonable one, and we adhere to it. The appellant was not entitled to a charge as to whether he actu-

---

2. The Congressional declaration of purpose in enacting the Federal Gun Control Act of 1968 is reprinted in 18 U.S.C.A.

§ 921 at p. 107 of the 1971 Pocket Parts.

ally made the acquisition of firearms himself or whether the *acquisition was* made by others. One who makes a false statement in connection with the acquisition of a firearm is liable under Section 922(a) (6) whether or not he is the actual purchaser.

### III. *Waiver of Miranda Rights*

Finally, White contends that the Government has failed to sustain its burden of proving a proper waiver of his rights before he gave the oral statement, the contents of which were admitted into evidence in the form of testimony by an investigating officer. In asserting the absence of waiver, White, a Negro, points to his below average I.Q., fifth-grade education, poor reading ability, and the coercive effect of the presence of two white officers when he allegedly waived his rights.

■ The standard for assessing waiver of *Miranda* rights was recently enunciated by this Court in United States v. Montos, 5 Cir. 1970, 421 F.2d 215, cert. denied, 1970, 397 U.S. 1022, 90 S.Ct. 1262, 25 L.Ed.2d 532.[3]

When a defendant warned of his rights makes statements without a lawyer present, the prosecution may use these statements at trial only if it sustains its "heavy burden" of demonstrating that the defendant "knowingly and intelligently waived his privilege against self-incrimination and his

right to retained or appointed counsel." Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 1628 [16 L.Ed.2d 694] (1966). *See also* Gilpin v. United States, 5 Cir., 1969, 415 F.2d 638; Moll v. United States, 5 Cir., 1969, 413 F.2d 1233. To be valid, a waiver must be made voluntarily, United States v. Ogle, 5 Cir., 1969, 418 F.2d 238, and may not be presumed "simply from the silence of the accused after warnings are given or simply from the fact that a confession was in fact eventually obtained." Miranda v. Arizona, 384 U.S. 436, 475, 86 S.Ct. 1602, 1628 [16 L.Ed.2d 694] (1966). An express statement that the individual does not want a lawyer is not required, however, to show that the individual waived his right to have one present. *See* Bond v. United States, 10 Cir., 1968, 397 F.2d 162, 165. All that the prosecution must show is that the defendant was effectively advised of his rights and that he then intelligently and understandingly declined to exercise them. *See* Carnley v. Cochran, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962).

*Id.* at 224; *accord,* United States v. Mix, 5 Cir. 1971, 446 F.2d 615.

■ In the case at bar, White was taken immediately after arrest before a Texas judge who gave him the warning required by Texas law.[4] A short time

---

3. "In this case the record establishes that Montos was adequately advised of his rights and that he voluntarily, knowingly, and intelligently waived them. Stokes read the warnings to Montos and then handed the warning and waiver form to him. After defendant had read the form, Stokes asked if he understood it. Montos replied that he did. Approximately 40 minutes later, after Montos had been questioned briefly, he was taken to the Sectional Center. He there signed the waiver form and asked to call a lawyer. We conclude under all circumstances of the case that the Government met its burden of showing a valid waiver." 421 F.2d at 224.

4. The exact content of the warning given to White by the judge is not in the record.

A witness, however, testified that the warning was given. The warning is prescribed by Vernon's Ann.T.S.Code of Criminal Procedure Article 15.17 which reads:

"Art. 15.17. Duties of arresting officer and magistrate.

"In each case enumerated in this Code, the person making the arrest shall immediately take the person arrested before some magistrate of the county where the accused was arrested. The magistrate shall inform the person arrested of the accusation against him and of any affidavit filed therewith, of his right to retain counsel, of his right to request the appointment of counsel if he is unable to obtain counsel, and of his right to have an examining trial. He shall also inform the person arrested

later, he was interviewed by a special investigator from the Treasury Department. Before commencing this interview, the investigator identified himself and read out loud Treasury Form No. 4176, which fully and fairly complies with *Miranda* by advising a person of his rights and giving him an opportunity to waive them.[5] The document was given to White in order that he might read it. He was told of the purpose of the investigation, and he signed the waiver of rights form. White testified at the trial as to the events described above and indicated an understanding of those rights. In addition, the court gave a cautionary instruction which comports with that followed in Kulyk v. United States, 5 Cir. 1969, 414 F.2d 139, and meets the requirements of Jackson v. Denno, 1964, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. We conclude that the Government adequately sustained its burden of establishing voluntariness and that the district court did not err when it admitted the testimony as to the oral statements made after the waiver into evidence.

Affirmed.

that he is not required to make a statement and that any statement made by him may be used against him. The magistrate shall allow the person arrested reasonable time and opportunity to consult counsel and shall admit the person arrested to bail if allowed by law."

No admissions or statements made by appellant at the time of or subsequent to this warning were ever introduced into evidence.

5. Form No. 4176 reads as follows:

WAIVER OF RIGHT TO REMAIN
SILENT AND OF RIGHT TO
ADVICE OF COUNSEL
STATEMENT OF RIGHTS

Before we ask you any questions, it is my duty to advise you of your rights.

You have the right to remain silent.

Anything you say can be used against you in court, or other proceedings.

You have the right to consult an attorney before making any statement or answering any questions, and you may have him present with you during questioning.

You may have an attorney appointed by the U. S. Commissioner or the court to represent you if you cannot afford or otherwise obtain one.

If you decide to answer questions now with or without a lawyer, you still have the right to stop the questioning at any time, or to stop the questioning for the purpose of consulting a lawyer.

HOWEVER—

You may waive the right to advice of counsel and your right to remain silent, and you may answer questions or make a statement without consulting a lawyer if you so desire.

WAIVER

