**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Wayne ENGLAND, Defendant-
Appellant.**

**No. 72–3402
Summary Calendar.***

United States Court of Appeals,
Fifth Circuit.

June 21, 1973.

Rehearing Denied July 19, 1973.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New

York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Randy Taylor, Dallas, Tex., for defendant-appellant.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., for plaintiff-appellee.

Before WISDOM, AINSWORTH and CLARK, Circuit Judges.

AINSWORTH, Circuit Judge:

Robert Wayne England was indicted on ten counts of illegally using the mails to promote his intended scheme of defrauding various customers who paid fees for assistance in obtaining jobs overseas, in violation of 18 U.S.C. § 1341. Following a lengthy trial, the jury returned a verdict of guilty on all ten counts. On August 25, 1972, the district judge sentenced England to three years' imprisonment on each count to run concurrently. Appellant principally contends that the district judge improperly excluded certain evidence relating to intent, failed to give jury instructions on good faith, and gave an instruction which allowed the jury to return a verdict of guilty on less evidence than that required by the indictment. After reviewing these contentions as well as the other points of error raised in the appellant's brief, we affirm.

England helped form World Wide Services, Inc., and served as its executive director and overseas correspondent. The corporation employed two other people who worked under him. During the short time that the corporation was in business from October 1970 until April 1971, it advertised promises of job placement in foreign locations. One typical customer, Matt Sims, responded to an advertisement placed in a Fort Worth newspaper in October. He was an instructor in refrigeration at an industrial training school. England told him of openings for a refrigeration specialist in Sydney, Australia, at a salary of $14,000 per year. Based on England's further assurance that World Wide Services would arrange for the job to start in January, Sims sent World Wide Services a check for $192.50 by certified mail. Subsequently, he received through the mail a contract which he signed and mailed back to World Wide Services. No job offers were forthcoming and World Wide Services did not refund the money.

I

■ The initial points of error relate to various evidentiary rulings by the district judge pertaining to appellant's defense of good faith. First, appellant contends that the trial judge improperly excluded as hearsay the testimony of appellant and defense witness Aulda Helene Shields of a conversation England had with C. L. Harris of Harris International. This testimony would have told of representations by Harris to England that Harris had openings for one hundred people in jobs in Ecuador. Thus appellant contends that such evidence would have shown his good faith and that foreign jobs were in fact available. Although this evidence may arguably have been admissible under the state of mind exception to the hearsay rule, see McCormick's Handbook of the Law of Evidence § 249, pp. 590–91 (2d ed. 1972) and Rules of Evidence for United States Courts and Magistrates 803(3), 56 F.R.D. 183, 300 (effectiveness suspended by Pub.L. 93–12, 93d Cong., 1st Sess., March 30, 1973, 87 Stat. 9), exclusion thereof by the Court was proper since it is clear that England did not promise any of the customers mentioned in the indictment that they would obtain employment in Ecuador.

■ Second, appellant contends that the district judge should not have excluded testimony about the contents of a letter England allegedly wrote to a prosecution witness advising him not to act hastily in selling his house in anticipation of employment abroad. However, England did not account for loss of the copy of his letter from his files, other than to testify that the files "survived two years, two kids, two dogs, and a house full of rats." Because of such an unsatisfactory explanation, the district judge properly excluded testimony about the contents of the letter as being contrary to the best evidence rule. *See*

McCormick, *supra*, § 229, pp. 559–60 and Rules of Evidence, *supra*, 1002, 1004(1).

■ Third, appellant contends that the district judge should have permitted defense counsel to ask the victims who took the stand whether they would have dealt with England even if they had read newspaper articles based on the Dallas Better Business Bureau's revelations of the fraudulent practices. The district judge correctly refused to allow such a hypothetical question which would have produced immaterial and subjective answers. *See generally* Shale v. United States, 5 Cir., 388 F.2d 616, 618, cert. denied, 393 U.S. 984, 89 S.Ct. 456, 21 L.Ed.2d 445 (1968).

In all of these evidentiary rulings the district judge acted within his discretion authorized by Rule 26 of the Federal Rules of Criminal Procedure.

## II

■ Various jury charges relating to good faith were requested by the defendant and refused by the district judge. For example, one of defendant's proposed instructions would have advised the jury that "the seller has the right to puff his property in an extravagant manner and to exault its value to the highest point," and another instruction would excuse defendant's false promises if they did not come true due to "business failure or for some other reason beyond Defendant's control." *See generally* United States v. Diamond, 5 Cir., 1970, 430 F.2d 688, 692; Greenhill v. United States, 5 Cir., 1962, 298 F.2d 405, 411; United States v. March, M.D.Pa. 1966, 251 F.Supp. 642, 645–646.

We agree with the district judge's ruling which denied the requested instructions in the circumstances of this case, because the facts overwhelmingly refute any defense based on good faith. England did more than puff his services. He misrepresented among other things

that 98 per cent of the applicants were successfully placed abroad.

## III

The district judge instructed the jury in part as follows:

> The Defendant is not on trial for errors in judgment; however, it is a principle of law that careless and false statements wilfully made without regard to whether they are true or false and put forth without reasonable basis for the purpose of obtaining money and property from another are also fraudulent.

This instruction varies somewhat from the indictment which charged England with making representations, "well knowing at the time that the pretenses, representations and promises, would be and were false when made." Therefore, appellant contends that he was convicted on less evidence than that required by the indictment.

■■ Recently, in United States v. Trexler, 5 Cir., 1973, 474 F.2d 369, we summarized the law relating to this issue and we noted that the Government need not prove all facts charged in the indictment as long as it proves other facts charged in the indictment which do satisfy the essential elements of the crime. *See also* United States v. White, 5 Cir., 1971, 451 F.2d 696, 698; Jackson v. United States, 1966, 123 U.S.App.D. C. 276, 359 F.2d 260, 262–265. Here an essential element according to the statute is intent "to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and the indictment elsewhere did so charge the defendant. The passage in the indictment relied upon by appellant was mere surplusage. Accordingly, the district judge's definition of "fraudulent" was consistent with the statute and the indictment.

Affirmed.