**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Albert NEWMAN and Jeanette Richardson, Defendants–Appellants.**

**No. 79–5634.**

United States Court of Appeals,
Fifth Circuit.

Oct. 14, 1980.

Richard E. Miley, Augusta, Ga. (Court-appointed), for Newman.

Grace E. Evans, Asst. Federal Public Defender, Augusta, Ga., for Richardson.

J. Michael Faulkner, Asst. U. S. Atty., Augusta, Ga., for plaintiff–appellee.

Before HENDERSON, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Jeanette Richardson and Albert Newman appeal their convictions for conspiring, aiding, and abetting in firearms sales in violation of the Gun Control Act of 1968. 18 U.S.C. §§ 922(b)(3),[1] 922(b)(5),[2] 922(m)[3] (1976). We affirm the convictions.

## I. *The Facts*

Richardson and Newman were employed by Harley's Mini–Market, a licensed firearms dealer in Blythe, Georgia. Both defendants participated in a series of handgun sales to Manuel Williams and Benjamin Thomas, South Carolina residents working as undercover agents for the Bureau of Alcohol, Tobacco and Firearms under the direction of Special Agent Robert R. Briggs. From June through October, 1978, the undercover agents repeatedly entered Harley's Mini–Market, declared their South Carolina residence, completed Section A of Form 4473[4] with information drawn from the drivers licenses of three Georgia woman, and purchased handguns. The agents recorded these transactions with a con-

---

1. 18 U.S.C. § 922(b)(3) (1976) provides, in pertinent part, "It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any firearm to any person who the licensee knows or has reasonable cause to believe does not reside in . . . the State in which a licensee's place of business is located . . .."

2. 18 U.S.C. § 922(b)(5) (1976) provides, in pertinent part, "It shall be unlawful for any . . . licensed dealer . . . to sell or deliver . . . any firearm . . . to any person unless the licensee notes in his records, required to be kept pursuant to § 923 of this chapter, the name, age, and place of residence of such person . . . .."

3. 18 U.S.C. § 922(m) (1976) provides, in pertinent part, "It shall be unlawful for any licensed . . . dealer . . . knowingly to make any false entry in, to fail to make appropriate entry in, or to fail to properly maintain, any record which he is required to keep pursuant to § 923 of this chapter or regulations promulgated thereunder."

4. Form 4473 is the Firearms Transaction Record used by the Treasury Department to monitor gun sales by licensed dealers. *See* 27 C.F.R. § 178.124(c) (1980). Section A of the Form, to be filled out by the purchaser, elicits information on gun buyers; Section B, to be completed by the dealer, collects information on the firearms sold. In Section B, the seller signs the statement asserting: "On the basis of: (1) the statements in Section A; (2) the verification of identity noted in Section B; and (3) the information in the current list of Published Ordinances, it is my belief that it is not unlawful for me to sell, deliver or otherwise dispose of the firearm described below to the person identified in Section A."

cealed microphone and radio transmitter. Richardson, Newman, and their employer, Lehman Harley,[5] were indicted for their roles in these sales.

At trial, the jury found Newman guilty on two counts of aiding and abetting[6] firearms sales to a known nonresident[7] (a violation of § 922(b)(3)), two counts of aiding and abetting firearms sales made without the requisite disclosure of information about the purchaser (an offense under § 922(b)(5)), one count of aiding and abetting the failure to make required records in conjunction with the sale of firearms (a violation of § 922(m)), and one count of conspiring to commit the foregoing offenses (an act prohibited by 18 U.S.C. § 371 (1976)). Richardson was convicted on two counts of aiding and abetting violations of § 922(b)(3), two counts of aiding and abetting violations of § 922(b)(5), and a conspiracy count. The trial court suspended sentence on each count and placed each defendant on three years probation.

On appeal, the defendants raise questions going to the propriety of their indictments, the conduct of the trial, the sufficiency of evidence, the applicability of § 922(b)(3) to these facts, and the existence of a legal duty on firearms dealers under § 922(b)(5) to insure the accuracy of information provided by purchasers on Section A of Form 4473. We deal first with the defendants' objections to the indictment, the trial, and the sufficiency of evidence.

II. *The Indictment, the Trial, and the Convictions*

▮ The defendants charge that the trial court's instructions to the jury on the record keeping offenses alleged under §§ 922(b)(5) and 922(m) constituted an

amendment of the indictment. This purported amendment, they assert, compromised their fifth amendment right to be indicted by a grand jury. The indictment alleged noncompliance with the record keeping requirements of 18 U.S.C. § 923, but failed to specify whether the offense charged pertains to the compendium of all transactions by the firearms dealer required by 27 C.F.R. § 178.125(e) (1980) or to the individual Firearms Transaction Records (Form 4473's) required by 27 C.F.R. § 178.-124(c) (1980).[8] The defendants urge that the trial court impermissibly altered the indictment on the essential element of the offense charged by instructing the jury that the indictment referred to Form 4473.

We disagree. The indictment gave the defendants notice that record keeping violations with respect to eight discrete sales were at issue; the universe of all possible records implicated here encompasses only eight entries on a bound log and the Form 4473's completed in connection with each of these particular sales. By specifying in its jury instructions that the indictment referred to Form 4473, the trial court merely tailored the charge to the evidence adduced at trial. This constriction of exposure to criminal liability did not impair the defendants' right to the safeguards of grand jury processes. *See United States v. Glassman*, 562 F.2d 954, 957 (5th Cir. 1977). Appellants here failed to show that stripping superfluous baggage from the indictment by a more precise, less inclusive jury instruction prejudiced their cause.

▮▮ Nor do we perceive an abuse of discretion in the trial court's refusal to allow defendants' counsel to replay edited segments of the tape recordings of the gun transactions during closing argument. The

---

5. Harley pled guilty to two counts alleging recordkeeping offenses under §§ 922(b)(5) & 922(m).

6. Each of the aiding and abetting counts rests on 18 U.S.C. § 2(a) (1976): "Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."

7. Nonresident here means a person who does not reside in the state where the dealer is licensed.

8. 27 C.F.R. § 178.125(e) (1980) requires licensed gun dealers to maintain a log of their firearms transactions. This information is compiled from the data entered on Form 4473's accompanying each individual transaction.

trial court's control over the scope of closing argument is necessarily broad, especially when confronted with a repetitive offer. *See Herring v. New York*, 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975). The defendants concede that they enjoyed a full and fair opportunity to confront and to discredit the tape recordings during the four day trial. In these circumstances, we cannot agree that the trial judge abused his discretion by denying the defendants' request to repeat the exercise in closing argument.

▆ Defendant Newman separately challenges the sufficiency of evidence supporting his conviction for the August 22, 1978 sale of a revolver to undercover agent Williams. Newman questions the adequacy of proof that he knew Williams was a nonresident and that he engaged in affirmative conduct aiding and abetting the sale. On review of this point, we take the evidence and inferences drawn from it in a light most favorable to the jury's verdict. *Hamling v. United States*, 418 U.S. 87, 124, 94 S.Ct. 2887, 2911, 41 L.Ed.2d 590 (1974); *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

The evidence in the record on appeal indicates that Williams declared his South Carolina residence four times during the approximately fifteen minutes it took to consummate the August 22 sale. The evidence shows that Newman was within earshot of Williams for the entire period; Williams testified that Newman overheard his declarations regarding South Carolina residence. The record contains ample evidence to sustain the jury verdict on this count. Therefore, Newman's challenge grounded on insufficiency is meritless.

▆ Further, Newman's removal of the gun from a display rack and his handing the weapon to Harley to facilitate the sale satisfied the overt act element of the aiding and abetting offense. *See United States v.*

*Cowart*, 585 F.2d 1023 (5th Cir. 1979). We find that reasonable minds could have found this evidence of Newman's guilty knowledge and affirmative participation in the proscribed sale inconsistent with every reasonable hypothesis of innocence. *See, e. g., United States v. Whitmire*, 595 F.2d 1303 (5th Cir. 1979). Accordingly, this separate contention of Newman is not persuasive.

## III. *The Applicability of §§ 922(b)(3) & (b)(5)*

### A. *§ 922(b)(3)*

▆ Section 922(b)(3) outlaws firearm sales by licensed dealers to nonresidents. As the defendants point out, the provision does not regulate firearms transactions between residents of the same state, *United States v. Plyman*, 551 F.2d 965 (5th Cir. 1977). But the link appellants seek to establish between these propositions in the instant case fails.

▆ The defendants make much of the fact that undercover agents Williams and Thomas—who were unquestionably South Carolina residents—turned the firearms over to Special Agent Briggs, a Georgia resident, shortly after each purchase. This fact pattern, they urge, makes Briggs the "real purchaser" under the rationale of the straw—man transaction cases exemplified by *United States v. Brooks*, 611 F.2d 614 (5th Cir. 1980). *See also United States v. Scannapieco*, 611 F.2d 619 (5th Cir. 1980).[9]

We reject this reasoning. *Brooks* is inapposite here, because there is no evidence that the defendants knew Williams and Thomas would relinquish the guns to a Georgia resident. In fact, the record on appeal reveals that during the August 22 transaction, Williams indicated that the firearms would be transported for resale in New York. Nothing in the record of the trial suggests that these defendants knew Briggs was connected to the sales in any

---

**9.** Straw—man transactions occur when a licensed dealer sells a gun to a resident knowing that the resident is fronting for a nonresident purchaser. These sales are made with the transparent intent to evade the proscription on sales to foreign buyers; the key element is the dealer's knowledge that the straw—man resident purchaser will ultimately dispose of the weapon to a nonresident.

way. Thus, the ultimate disposition to Briggs and the Bureau of Alcohol, Tobacco and Firearms is immaterial to the defendants' liability for the acts proscribed by § 922(b)(3).

Moreover, § 922(b)(3) prohibits deliveries as well as sales of firearms to nonresidents. Regardless of how the sale issue is resolved–and we reiterate our view that the defendants participated in a *sale* to nonresidents–the delivery of weapons to Williams and Thomas constituted a violation of the statute. There can be no doubt that Newman and Richardson are criminally liable for delivering to nonresidents; the fact that the nonresidents acted at the instruction of a Georgian does not shield the defendants from the consequences of their acts. Although proof of either sale or delivery to nonresidents would support the convictions, *see United States v. McCann*, 465 F.2d 147, 162 (5th Cir.), *cert. denied*, 412 U.S. 927, 93 S.Ct. 2747, 37 L.Ed.2d 154 (1972); *Fields v. United States*, 408 F.2d 885, 887 (5th Cir. 1969), Newman and Richardson aided and abetted both sale and delivery in violation of § 922(b)(3).

B. *§§ 922(b)(5) & 922(m)*

The final issue raised by this appeal concerns the convictions on the even–numbered counts of the indictment; the appellants question whether sellers have a legal duty under §§ 922(b)(5) and 922(m) to obtain complete and accurate information on Section A of Form 4473, the section to be filled out by the purchaser. We find that the duty does exist and that these defendants breached it flagrantly and repeatedly by aiding and abetting sales of guns to male nonresidents identifying themselves as female residents of Georgia on the required forms.

The Gun Control Act does not impose strict liability on dealers for every failure to ferret out misrepresentations by purchasers on Section A of Form 4473. Rather, it forbids dealers to proceed with a sale when they *know* the purchaser is providing incomplete or false information. The Treasury Department regulation pro-

mulgated under § 922(b)(5) spells out the gun dealer's duty:

> Prior to making an over–the–counter transfer of a firearm . . . [the] licensed dealer . . . transferring the firearm shall obtain a Form 4473 from the transferree showing the name, address, date and place of birth, height, weight, and race of the transferee. . . Before transferring the firearm described in the Form 4473, the licensee . . . shall cause the transferee to identify himself in any manner customarily used in commercial transactions (e. g., a drivers license) and shall note on the form the method used. . . .

27 C.F.R. § 178.124(c) *quoted in United States v. Smith*, 584 F.2d 731, 732 n. 3 (5th Cir. 1978); *United States v. Scherer*, 523 F.2d 371, 373 n. 3 (7th Cir. 1975), *cert. denied*, 424 U.S. 911, 96 S.Ct. 1108, 47 L.Ed.2d 315 (1976). The regulation makes clear that the duty–creating use of the verb "note" in § 922(b)(5) encompasses the duty to obtain a completed Form 4473 from the purchaser with a correct and verified identification in Section A before consummating the sale.

When agents Williams and Thomas proffered Form 4473's bearing facially inaccurate identifications of the purchasers, the defendants were under a legal duty to refrain from proceeding with the sales. The defendants were reminded of their legal duty to refrain from selling each time they completed and signed Section B of Form 4473 attesting to the verification of the purchaser's identity. *See* n. 4 *supra*. Newman and Richardson do not deny that they knew the Forms contained inaccurate identifications of the purchasers. On these facts, plausible refutation becomes impossible. Instead, the defendants deny that it was their duty to obtain Form 4473's accurately identifying the purchasers and to verify the accuracy of those identifications before selling the guns. These denials squarely conflict with the plain language of 27 C.F.R. § 178.124(c) and the legislative intent underlying the statute.

**368**

Effectuation of Congress' purpose in enacting record keeping provisions of the Gun Control Act depends upon the cooperation of licensed firearms dealers to monitor weapons transactions. *See Huddleston v. United States*, 415 U.S. 814, 825, 94 S.Ct. 1263, 1269, 39 L.Ed.2d 782 (1974). The statutory interpretation urged by the defendants here evokes Judge Wisdom's rejection of an analogous defense to a Gun Control Act conviction in *United States v. White*, 451 F.2d 696 (5th Cir. 1979)[10]. Other circuits have been reluctant to constrict the duties imposed on sellers and purchasers faithfully to execute accurate Form 4473's in connection with firearms transactions. *See Scherer, supra* (upholding seller's §§ 922(m) & 923(g) convictions for sales made off the business premises without completion of Form 4473's); *United States v. Crandall*, 453 F.2d 1216 (1st Cir. 1972) (upholding § 922(a)(6) conviction of a defendant who misrepresented his identification on Form 4473 on grounds that § 922(b)(5) made false entries on the Form a "material" misstatement. The defendants' arguments do not compel our divergence from the beaten path in this case. To adopt the defendants' construction of § 922(b)(5) and § 922(m) would undermine the regulatory scheme Congress devised. This we cannot do. *See Huddleston*, 415 U.S. at 831, 94 S.Ct. at 1272.

For these reasons, the convictions are AFFIRMED.

---

**10.** White was convicted under § 922(b)(6) for entering false information on a Form 4473 while accompanying the actual purchaser of the handgun in a retail gun shop. He appealed on the theory that, since he was not the actual purchaser, the statutory prohibition against entering false information did not apply to him. His defense failed. Judge Wisdom, for the court, said: "Were the appellant's interpretation of the statute accepted, an individual could falsify the form and escape liability . . . Surely, Congress could not have intended to allow such easy evasion of a comprehensive scheme." United States v. White, 451 F.2d at 699.