[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2000
THOMAS K. KAHN
CLERK

————————————————

No. 99-13906

————————————————

D. C. Docket No. 98-00556-CR-1-JTC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SAFIALLAH MUHAMMAD NELSON,
a.k.a. "Mo",

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

**(August 10, 2000)**

Before TJOFLAT and HULL, Circuit Judges, and PROPST[*], District Judge.

HULL, Circuit Judge:

—————————

[*]Honorable Robert B. Propst, District Judge for the Northern District of Alabama, sitting by designation.

Safiallah Muhammad Nelson appeals his conviction for one count of conspiracy to make false statements with respect to information required by law to be kept in the records of federally licensed firearms dealers, in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A). After review, we affirm.

## I. BACKGROUND

On January 19, 1999, the grand jury indicted Nelson and his twin brother Khalil Abdullah Nelson ("Khalil") on nine counts of violating 18 U.S.C. § 924(a)(1)(A) by aiding and abetting in the making of false statements to federally licensed gun dealers with respect to information about firearms transferees, which dealers are required to keep in their records. In addition, the indictment charged Nelson and Khalil with one count of conspiracy to make false statements with respect to this information, in violation of 18 U.S.C. §§ 371 and 924(a)(1)(A).

The indictment alleges that from at least July 1998 through November 1998, Nelson, who was not a Georgia resident, worked with Khalil to recruit five Georgia residents to purchase at least thirty firearms on their behalf. According to the indictment, these transactions were "straw purchases." Nelson and Khalil allegedly furnished the money to purchase the firearms and also paid money and controlled substances to the individuals they recruited. When purchasing these firearms, the recruited individuals would fill out Bureau of Alcohol, Tobacco and Firearms

2

("ATF") Form 4473, and each would falsely state on that form that he or she was the "actual buyer" of the firearms at issue.[1] After the purchase, either Nelson or Khalil would take possession of the firearms, which were readily concealable handguns, including 9 millimeter Lorcins, .45 caliber Hipoints, and .380 caliber Bryco/Jennings.

Nelson filed a motion to dismiss the indictment, arguing that the "straw purchase" theory of liability relied on by the Government in prosecuting his case was a usurpation of legislative authority by the ATF, was unconstitutionally vague, and violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 552(a). On April 12,

---

[1] Question 8(a) on Form 4473 requires an individual to certify that he is the "actual buyer" of the firearm or firearms listed on the form, as follows:

> Are you the actual buyer of the firearm indicated below? If you answer no to this question the dealer cannot transfer the firearm to you. *(See Important Notice 1.).*

Important Notice 1 is on the second page of the form and provides:

> **WARNING - The Federal firearms laws require that the individual filling out this form must be buying the firearm for himself or herself or as a gift. Any individual who is not buying the firearm for himself or herself or as a gift, but who completes this form, violates the law. Example: Mr. Smith asks Mr. Jones to purchase a firearm for Mr. Smith. Mr. Smith gives Mr. Jones the money for the firearm. If Mr. Jones fills out the form, he will violate the law. However, if Mr. Jones buys a firearm with his own money to give to Mr. Smith as a birthday present, Mr. Jones may lawfully complete this form. A licensee who knowingly delivers a firearm to an individual who is not buying the firearm for himself or herself or as a gift violates the law by maintaining a false ATF F[orm] 4473.**

1999, the magistrate judge recommended that Nelson's motion be denied. Nelson filed timely objections, which the district court overruled.[2]

On May 10, 1999, Nelson entered into a negotiated plea agreement with the Government. Pursuant to this agreement, Nelson pled guilty to the one conspiracy count against him, and the Government dismissed the nine remaining charges against Nelson and all charges against Khalil. Nelson reserved the right to file a direct appeal with respect to the court's denial of his motion to dismiss the indictment.

At the sentencing hearing held on August 31, 1999, the district court sentenced Nelson to 37 months' imprisonment. Nelson then appealed.

## II. DISCUSSION

Nelson challenges his conviction under 18 U.S.C. § 924(a)(1)(A), based on his involvement in "straw purchases" of firearms.[3] In these "straw purchases," the individuals Nelson and Khalil hired to purchase firearms represented themselves to be the actual buyers of those firearms and filled out ATF Form 4473 accordingly, even though those individuals were merely agents for Nelson and Khalil. Section

---

[2] The district court based its decision to deny Nelson's motion on its order in United States v. David, No. 97-00487-1-CR-1-JTC (N.D. Ga. May 26, 1998), which this Court subsequently affirmed, No. 98-9262 (11th Cir. Dec. 10, 1999). In David, the defendant raised and the district court rejected the same three arguments that Nelson makes in challenging his conviction under the "straw purchase" theory of liability. Id.

[3] The parties agree that this case involves statutory interpretation and other questions of law, which are reviewed de novo. See United States v. Lowery, 166 F.3d 1119, 1122 (11th Cir.), cert. denied, 120 S. Ct. 212 (1999).

924(a)(1)(A) prohibits individuals from making false statements or representations with respect to the information federally licensed firearms dealers are required to keep in their records, as follows:

> whoever—
>    (A) knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter . . .
> . . . .
> shall be fined under this title, imprisoned not more than five years, or both.

18 U.S.C. § 924(a)(1)(A). The question presented in this case is whether the identity of the actual buyer of a firearm is the type of "information" referred to in § 924(a)(1)(A). After review, we conclude that the actual buyer's identity does constitute "information required by this chapter to be kept in the records of a person licensed under this chapter."

Several provisions in Chapter 44 of Title 18 of the United States Code, which is the "chapter" referred to in § 924(a)(1)(A), require licensed firearms dealers to keep records containing information about the identity of individuals who buy firearms. These provisions include 18 U.S.C. §§ 923(g), 922(b)(5), and 922(s)(3). Section 923(g) sets forth the general requirement that "[e]ach . . . licensed dealer shall maintain . . . records of . . . sale[] or other disposition of firearms at his place of business." 18 U.S.C. § 923(g)(1)(A). Section 922(b)(5) then makes clear that these

5

records must contain, at a minimum, "the name, age, and place of residence" of any individual who purchases a firearm from a licensed dealer.[4]  In addition, prior to selling a handgun to an individual "transferee," a licensed dealer must, under section 922(s)(3), obtain a statement from that transferee which contains "the name, address, and date of birth appearing on a valid identification document . . . of the transferee and a description of the identification used."  18 U.S.C. § 922(s)(3).  Further, the dealer must verify the transferee's identity by examining the identification document described in the transferee's statement.  Thus, licensed firearms dealers are required to keep information about the identity of firearms buyers in their records.  As a result, false statements or representations relating to this information are prohibited under § 924(a)(1)(A).

Additionally, the information required under § 922(b)(5) and § 922(s)(3) is information about the identity of the actual buyer, who supplies the money and intends to possess the firearm, as opposed to that individual's "straw man" or agent.  This

---

[4] Section 922(b)(5) provides, in relevant part:

> (b) It shall be unlawful for any licensed importer, licensed manufacturer, licensed dealer, or licensed collector to sell or deliver—
> . . . .
> (5) any firearm . . . to any person unless the licensee notes in his records, required to be kept pursuant to section 923 of this chapter, the name, age, and place of residence of such person if the person is an individual . . . .

18 U.S.C. § 922(b)(5).

information about the actual buyer's identity is necessary in order for the firearms dealer to ascertain whether that potential purchaser is in fact eligible to purchase a firearm under Chapter 44. See 18 U.S.C. § 922(b)(1)-(3) (making it unlawful for licensed dealers to sell firearms to individuals who are ineligible to purchase them as a result of restrictions imposed under state law or due to the individual's age or out-of-state residence). If an ineligible buyer could simply use a "straw man" or agent to obtain a firearm from a licensed dealer, the statutory scheme would be too easily defeated. See United States v. Lawrence, 680 F.2d 1126, 1128 (6th Cir. 1982) (affirming a "straw purchase" conviction under § 922(a)(6) and stating that "[i]f sales such as this one were insulated from the law's registration provisions, the effect would be tantamount to a repeal of those provisions"); United States v. White, 451 F.2d 696, 699-700 (5th Cir. 1971)[5] (affirming a "straw purchase" conviction under § 922(a)(6), reasoning, "[w]ere the appellant's interpretation of the statute accepted, an individual could falsify the form and escape liability through an intermediary. . . . Surely, Congress could not have intended to allow such easy evasion of a comprehensive scheme").[6]

_____

[5] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[6] Although Lawrence and White were decided under 18 U.S.C. § 922(a)(6) rather than § 924(a)(1)(A), their reasoning provides guidance here because of the similarities between the two provisions. Section 922(a)(6) makes it unlawful "for any person in connection with the acquisition . . . of any firearm . . . from a licensed dealer . . . knowingly to make any false or fictitious oral or

Consequently, we conclude that Congress intended § 924(a)(1)(A) to apply in the "straw purchase" situation presented here. The individuals Nelson and Khalil hired to purchase firearms represented themselves to be the actual buyers of those firearms and filled out ATF Form 4473 accordingly. However, these representations were false because Nelson and Khalil supplied the money for these purchases, intended to possess the firearms, and thus actually bought these firearms.

Nelson asserts, however, that his conviction must be reversed because the ATF rather than Congress developed the "straw purchase" theory of liability and, in doing so, the ATF usurped congressional power to define what conduct constitutes a crime. Nelson also contends that his prosecution under this theory was prohibited under the Due Process Clause of the Fifth Amendment because the theory is unconstitutionally vague. Finally, Nelson claims that the ATF has failed to publish any regulations about the "straw purchase" theory, in violation of the APA, 5 U.S.C. § 552(a)(1).

---

written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive" the dealer "with respect to any fact material to the lawfulness of the sale . . . of such firearm . . . under the provisions of this chapter." 18 U.S.C. § 922(a)(6). Thus, § 922(a)(6) and § 924(a)(1)(A) both prohibit the making of false statements or representations to firearms dealers relating to the sale of a firearm.

The two provisions do differ in the sense that § 924(a)(1)(A) does not require that the false statement or representation be "with respect to any fact material to the lawfulness of the sale," as § 922(a)(6) requires. See United States v. Hawkins, 794 F.2d 589, 590-91 (11th Cir. 1986) (holding that a defendant's convictions under both § 922(a)(6) and § 924(a)(1)(A) for filling out a single form does not violate double jeopardy). In addition, the two provisions carry different maximum penalties; the statutory maximum sentence for a violation of § 924(a)(1)(A) is five years, as opposed to ten years for a violation of § 922(a)(6). See 18 U.S.C. § 924(a)(1)-(a)(2). However, these differences do not alter the analysis here.

All of Nelson's arguments are without merit. First, the basis for his conviction is § 924(a)(1)(A), which, as already indicated, clearly contemplates liability for the type of "straw purchases" at issue here. In other words, Nelson's offense was created and defined by Congress, and not by an impermissible delegation of legislative authority to the ATF. Second, we conclude that Nelson's conviction under the "straw purchase" theory does not violate due process because this statute provides sufficient notice and does not encourage arbitrary and discriminatory enforcement. Finally, because Congress established this "straw purchase" liability with sufficient definiteness, Nelson was clearly convicted of violating a statute. He was not convicted of violating merely an unpublished agency interpretation of that statute. Therefore, Nelson's APA claim is without merit.

## III. CONCLUSION

For the foregoing reasons, we affirm Nelson's conviction and sentence.

**AFFIRMED.**